Wisconsin Granite Company, Appellant, vs. Industrial Commission and another, Respondents. [Two cases.]

*December 8, 1933—March 6, 1934.*

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *Lowell A. Lawson* of Chicago of counsel, and oral argument by *Mr. Harold M. Wilkie* and *Mr. Lawson.*

For the respondents there was a brief by the *Attorney General, Mortimer Levitan,* assistant attorney general, and *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Mr. Levitan* and *Mr. H. M. Langer.*

The following opinion was filed January 9, 1934:

OWEN, J. The defendant Matilda Swafford is the widow of John Swafford, deceased. On the 4th day of December, 1928, he was in the employ of the plaintiff, Wisconsin Granite Company. On that day the plant shut down. On the 18th day of December, Swafford was stricken by an attack of pneumoconiosis, an occupational disease peculiar to the granite industry, from which he died. The Industrial Commission made awards of compensation to his widow and to his estate, which awards were set aside on appeal to the circuit court for Dane county, on the ground that the so-called accident did not occur at a time when Swafford was rendering services for his employer. Upon an appeal from such judgment of the circuit court this court held, in effect, that it was not necessary that the employee

should be actually engaged in the performance of services at the time he came down with an occupational disease in order to entitle him to compensation by reason of such occupational disease; that it was sufficient under the law as it then stood, to entitle him to compensation if at the time he was stricken the relation of employer and employee existed. *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191. It was further held in that case that whether such relation existed at the time Swafford was stricken had not been tried before the Industrial Commission and, as a consequence, the case was remanded for a trial of that issue before the commission. Pursuant to such mandate the case was remanded to the Industrial Commission, with the result that on the 11th day of March, 1933, the commission made findings of fact to the effect that at the time Swafford was stricken with the occupational disease, namely, on December 18, 1928, he was in the employ of the plaintiff company, and awards of full compensation were made in favor of the widow, Matilda Swafford, and of the estate of John Swafford, deceased. Upon appeals from such awards they were confirmed by the circuit court, and the present appeals are from the judgments of that court so confirming said awards.

Upon these appeals it is contended that the evidence introduced before the Industrial Commission does not support the finding that Swafford was in the employ of the plaintiff Granite Company on the 18th day of December, 1928, and that, consequently, the Industrial Commission erroneously awarded the compensation carried by its awards dated March 11, 1933.

There is no principle more trite in our jurisprudence than that a finding of fact made by the Industrial Commission can no more be disturbed by this court than can a finding of fact of a jury if there be any credible evidence to support it. The powers of the court in the latter case were fully discussed in *State v. Hintz,* 200 Wis. 636, 229 N. W. 54.

What was there said concerning the power of a court to disturb the finding of a jury upon a question of fact is applicable here and need not be repeated. Our duty, therefore, is to address ourselves simply to the question of whether the record reveals any credible evidence to sustain the finding of fact of the Industrial Commission here challenged, bearing in mind the principles of law declared on the former appeal in these cases. If there be evidence to sustain such finding, it must be found in the testimony of one William Gall, Jr., who was superintendent of the Wisconsin Granite Company's quarry and operations at the village of Ableman on the 4th day of December, 1928.

Subsequent to the first award, and prior to the hearing of the former appeal in this court, Gall had made and delivered to claimant's attorney an affidavit concerning the circumstances under which the plant was closed down and the deceased laid off. The claimant's attorney, with this affidavit before him, placed Mr. Gall upon the stand during the hearing before the Industrial Commission and commenced to examine him as to matters touched upon in that affidavit. As he proceeded with the examination, Mr. Gall's testimony in many particulars was directly contrary to the statements contained in the affidavit. The affidavit itself was then offered in evidence, to which objection was made, but the examiner for the commission ruled that it might be admitted. Counsel for claimant then said:

"In view of counsel's objection, I desire to ask the witness a few more questions and especially in view of the last answer which he made to the last question propounded to him before the short recess. In that affidavit you stated, did you not Mr. Gall, that the plant was in need of repairs and that some of the employees, including John Swafford, were temporarily laid off while the repairs were being made."

To this question Mr. Gall made the following answer: "It was my intention to hire the older men back." The examiner then said: "Listen to the question. The question

was, Did you make such a statement as this—not what your intention was." *A.* "I think I made the statement in the affidavit." Then followed the following questions by attorney for claimant and answers by the witness:

"*Q.* And you were telling the truth were you not? *A.* To the best of my recollection.

"*Q.* And in that affidavit you also stated did you not at the time you laid off the said John Swafford that you informed him he should return to work after the repairs were completed and after you had returned from the crushed stone convention which you were in the habit of attending? *A.* I think that I did.

"*Q.* And it was correct? *A.* To the best of my recollection.

"*Q.* And in that affidavit also you made the statement did you not that during the month of January, 1929, the exact date of which you could not recall, that you attended the convention and upon returning home from there and in the month of January, 1929, you notified Mr. Swafford that he should return to work at the quarry plant of the Wisconsin Granite Co. at Ableman, Wisconsin? *A.* I think I made the statement then as I did now.

"*Q.* You don't deny the statement I just read to you which appears in this affidavit? *A.* Not at all.

"*Q.* And the statement you made to that effect was true? *A.* To the best of my recollection."

Upon cross-examination the witness testified:

"The conversation I had with Mr. Swafford I couldn't repeat exactly, but in effect I told him that when we needed him we would call him back."

Upon further cross-examination the following questions and answers were made:

"*Q.* I will ask you, Mr. Gall, if it isn't a fact that the plant shut down at that time because of lack of business by order of Mr. McGuire? *A.* Yes, sir.

"*Q.* And at the time the plant was shut down, nothing was said about retaining any men, or in other words, the plant was closed until such time as business warranted it being reopened. *A.* Yes, sir."

And further:

"When I talked with Mr. Langer before the affidavit was drawn up, I told him in substance that I had told Swafford that if he was wanted again that he would be notified. I signed the affidavit on the assumption that what was stated in the affidavit amounted to this: that I had told Mr. Swafford that if he was needed he would be told to come again and would be rehired. I signed that affidavit on that assumption. At the time Swafford left he was simply told that if he was needed, he would be called back. I think I told Swafford that if I needed him or needed any men, I would hire him back."

While the affidavit itself was offered and received in evidence, it was plainly improperly received, and the affidavit itself cannot be considered as evidence. However, from the foregoing excerpts from Gall's testimony it appears that the plant was in need of repairs, and that some of the employees, including John Swafford, were temporarily laid off while the repairs were being made. Gall says he thinks he made that statement in the affidavit, and that such statement was true to the best of his recollection. He also states that to the best of his recollection he informed Swafford that he should return to work after the repairs were completed, and after he, Gall, had returned from the crushed stone convention. He further emphasizes the fact by answering "Not at all" to the question: "You don't deny the statement I just read to you which appears in this affidavit?"

By any trial, test, or definition this certainly constitutes sworn testimony before the Industrial Commission that Swafford was laid off because the plant was shut down for

repairs, and that Swafford was told that he should return to work after the repairs were completed and after Gall had returned from the crushed stone convention. This testimony being in the case, it was the function of the Industrial Commission to put it in the scales and balance it with all the other evidence in the case. It being in the case, it could not be read out of the case because of any quantity of evidence of a contradictory nature. It was the function of the Industrial Commisson, and of the commission only, to balance it against all contradictory evidence, and judge finally where the weight of the evidence lay. It was also the exclusive function of the Industrial Commission, as well, to reconcile inconsistencies in Gall's testimony.

It is seriously urged that the claimant was improperly permitted to cross-examine her own witness. The examiner permitted such cross-examination on the ground that she was surprised by the answers previously given. It was clearly within the discretion of the examiner to permit such cross-examination under the circumstances. The attorney for the claimant had before him the sworn statements which Gall had deliberately and considerately made upon a prior occasion, and when Gall made answers in direct contradiction of statements he had made in the affidavit, any trial court or other examining body was justified in permitting cross-examination of the witness whose present testimony directly disputed statements which he had made and sworn to upon a prior occasion. Furthermore, Gall was an adverse witness, in that he was an agent and employee of the Granite Company at the time of the occurrence of the facts under examination, and was subject to cross-examination under the provisions of sec. 325.14, Stats.

Finally, it may be said that there is nothing incredible in Gall's testimony as above construed. It is not beyond human experience that plants of this character shut down for repairs. Neither is there anything incredible in the

assumption that under such circumstances the relation of employer and employee is not *ipso facto* terminated. As held on the former appeal, that relation is not terminated in the absence of affirmative conduct on the part of either the employee or the employer. .

Before closing this opinion, we should refer to the fact that the appellant claims that the award in this case impairs its contract rights, in that compensation is awarded to an employee for injuries received by the employee after the employer-employee relation has terminated, in violation of numerous decisions of this court holding that in order to entitle an employee to compensation the injury for which compensation is awarded must have been incurred during the existence of the employer-employee relation. The exact question determined on the other appeal was, when that relation once established may be said to have been terminated. We there held that for the purposes of compensation for occupational disease the relationship continued until terminated by an affirmative act of one or the other of the parties. Whether that relation was terminated in the instant case was the exact issue that was remanded to the Industrial Commission for determination. Upon competent evidence the Industrial Commission determined that the relationship had not been terminated at the time of the injury, i. e. the time when the employee was stricken with the occupational disease. We discover nothing in this award which can be said to be violative of contract rights.

*By the Court.*—Judgments affirmed.

FAIRCHILD, J., dissents.

A motion for a rehearing was denied, with $25 costs in one case only, on March 6, 1934.