Edward E. Gillen Company and another, Appellants, vs. Industrial Commission and another, Respondents.

*October 7—November 5, 1935.*

For the appellants there was a brief by *Shaw, Muskat & Paulsen,* attorneys, and *Van B. Wake* of counsel, all of Milwaukee, and oral argument by *Mr. Wake.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

NELSON, J.  The question for determination is whether the Industrial Commission, after having given an applicant a full hearing and after having properly denied him compensation, may set aside its order on the ground that it has discovered a mistake, no mistake being specified and none appearing in the record, and thereupon grant the applicant a new hearing, and, upon the applicant's changed testimony with respect to a material controlling matter, make an award of compensation.

On November 13, 1931, and for many years prior thereto, the defendant Charles Matthews had been employed in the city of Milwaukee by the plaintiff, Edward E. Gillen Company.  The Gillen Company was chiefly in the business of driving piles, constructing breakwaters, etc.  On the day mentioned Matthews worked on a hoisting scow which lay along the south side of a water slip.  The slip was connected with the Menomonee river, and ran in a westerly direction therefrom.  The land to the south of the slip was owned by the St. Paul Railway Company and was used in part by the Gillen Company with the permission of the former.  The land along the north side of the slip, which is described in the record as a dock, was used by the Gillen Company for storage purposes.  The westerly end of the slip was substantially rectangular in shape.  To the west of the slip was an open space paved with concrete and having all of the appearances of a roadway which proceeded westerly from the slip to Twelfth street in the city of Milwaukee. That land belonged to the North Western Fuel Company. At the end of the slip the following construction existed: Approximately in the center of the westerly end of the slip there were seventeen large piles driven into the soil, the tops

of which were cut off so that they were substantially level; immediately back of the piles mentioned was a much longer row of similar piles cut off shorter than the piles first mentioned, upon which ran across the entire end of the slip, a so-called wale or wale strip constructed of 12x12 and 6x12 timbers, fastened together so that their upper surfaces were level and sixteen inches wide; back of the wale there was steel construction composed of interlocked heavy V-shaped steel piles driven into the ground; to the west of the steel piling construction was the open concrete area; the top of the steel piling construction was substantially level with the wale strip, but considerably higher than the concrete area or roadway; the V-shaped openings in the steel pilings were sufficiently large to permit one to step into them; these openings were immediately adjacent to the wale strip.

When Matthews quit work at about 6:30 p. m., he and a companion started for home, intending to go around the slip to the north side thereof, cut across the piling grounds of the Gillen Company and certain railroad tracks there situate, and proceed to Eighth street, where his companion's car was parked. At that time it was dark and misty. After leaving the scow he proceeded westerly along the south side of the slip for a distance of some two hundred feet before reaching the concreted area and the south end of the wale strip. Matthews testified at the first hearing that while attempting to get upon the wale strip, or after walking a short distance thereon, he fell into one of the V-shaped openings and was injured.

Upon the first hearing, the commission found: "That on November 13, 1931, about 6:30 o'clock in the evening, . . . he [Matthews] proceeded to go home, taking a route over and across a concrete roadway owned by the North Western Fuel Company and leading to a dock. The public has the use of this concrete roadway and this street and dock had been used occasionally by the respondent for loading and

unloading; *that the applicant could have walked on the concrete in going across this roadway, but instead, stepped upon the dock runway approximately one foot from the street level and while walking along this runway, his foot slipped through the steel sheeting, which resulted in a severing of his urethra and injury to his knee."* (Italics ours.) The commission concluded that the injury was not sustained while Matthews was performing services growing out of and incidental to his employment, and that he was not on the premises of his employer at the time of his injury. Within twenty days thereafter, on the *ex parte* motion of Matthews, the commission set aside its order and granted a further hearing. In its order setting aside its former order the commission stated:

"Findings of fact and order were entered in the above entitled matter by this commission under date of July 16, 1932. Subsequent thereto the commission has given its further consideration to the premises upon which this applicant was injured and the circumstances surrounding his accident, with particular reference to the premises of the employer and the means of egress and ingress to the premises, and it is our opinion that we have now made a mistake in our original findings, and the commission on its own motion hereby orders the setting aside of the original findings and order subject to further hearing."

Thereafter, a further hearing was granted. The plaintiffs questioned the jurisdiction of the commission to proceed, because, in setting aside its order it had not specified what mistake it had discovered, and because no mistake appeared upon the face of the record. Notwithstanding plaintiffs' protest, Matthews was granted another full hearing at which he was permitted to again testify fully as to all of the facts and circumstances surrounding the accident, and at which he contradicted and repudiated very material testimony given by him at the first hearing. The second hearing was, to all intents and purposes, a new hearing. The ex-

aminer at the second hearing was not the one who had conducted the first hearing. The second examiner, after having heard the testimony adduced, found in favor of the applicant and awarded compensation. Upon appeal to the commission the award of the examiner was affirmed by a divided commission. Commissioner Wrabetz dissenting. The award of the commission was affirmed by the circuit court.

Sec. 102.03 (1), Stats. 1931, provided in part:

"(1) Liability for compensation shall exist against an employer for any disability sustained by his employee, and for his death, in cases where the following conditions of compensation concur: . . .

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. Every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment."

The principal question to which the first examiner properly directed his attention was whether Matthews, at the time he was injured, was going from his employment in the ordinary and usual way and while on the premises of the Gillen Company. This is obvious from his findings, hereinbefore recited. That such findings were well supported by the evidence given at the first hearing, there cannot be the slightest doubt. And if they were, certainly no mistake appears upon the face of the record. No one could permissibly conclude that if Matthews was walking on the wale strip after dark on a misty night or was stepping up on it for the purpose of walking thereon, instead of walking across the concrete area, he was "going . . . from his employment in the ordinary and usual way while on the premises of his employer" so as to be considered "performing services growing out of and incidental to his employment." At the first hearing Matthews was asked many questions by his own counsel, by counsel for the plaintiffs, and by the examiner, the answers

to which unquestionably showed that at the time of, or just before the accident, he was either stepping up on the wale strip or was walking on it. At the second hearing Matthews denied being upon the wale strip or walking upon it, and maintained that he inadvertently stepped into one of the openings while proceeding to cross the extreme north end of the wale strip at a point where there was a platform or plank runway, obviously constructed there for the purpose of permitting people to cross from the concreted area to the north side of the slip. There is no possible way to harmonize his testimony given at the first hearing with his testimony given at the second hearing. It is irreconcilably conflicting. The picture which the whole record presents is that of an applicant who, having testified to certain facts and having failed to obtain an award, induced the commission to say that they had discovered a mistake and to grant him another hearing at which he was afforded an opportunity to testify in direct conflict with his testimony upon the first hearing, which changed testimony permitted a conclusion different from that reached by the first examiner. Such procedure is, to say the least, not orderly, and certainly not calculated to add to that well-merited confidence which the commission has always enjoyed.

Of course, the commission has authority to set aside, modify, or change its order, findings, or award at any time within twenty days from the date thereof if it shall discover any mistake therein (sec. 102.18, Stats. 1931). But the power so to act may not be arbitrarily exercised, and orderly procedure requires the commission, when it sets aside, modifies, or changes its orders, findings, or awards, to indicate the nature of its mistake, as it has no power so to act unless it has discovered what is in fact a mistake. *Welhouse v. Industrial Comm.* 214 Wis. 163, 252 N. W. 717. Where the mistake discovered is of such a nature that further testimony is rendered necessary in order to correct the mistake,

the commission may of course conduct a further hearing and take further necessary testimony. *Jordan v. Weinman,* 167 Wis. 474, 167 N. W. 810. But the statute, sec. 102.18, Stats. 1931, was never intended to authorize the commission to grant a new hearing to an applicant whose testimony fails to show him entitled to an award so as to afford him an opportunity to change his testimony as to a material controlling matter and thereby bring himself within the compensation act.

*By the Court.*—Judgment reversed, with directions to set aside the award.