GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 11, 1936—February 9, 1937.*

638

For the appellants there was a brief by *Rouiller, Dougherty, Arnold & Kivett* of Milwaukee, attorneys, and *Glenn D. Roberts* of Madison of counsel, and oral argument by *Mr. Glenn R. Dougherty, Mr. Michael H. Keelan* of Milwaukee, *Mr. Roberts,* and *Mr. W. Wade Boardman* of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Andrew W. Brunhart* of Milwaukee, argued orally for the respondent Larkin.

WICKHEM, J.   The defendant Larkin was employed as athletic director by the defendant Athletic Club, his duties requiring him to engage in all branches of athletic work.   He was injured on February 10, 1933, when he stumbled in stepping from one mat to another while carrying a weight over his head.   He felt a pain in the middle of his back and down his spine at the time of the accident.   Subsequently he grew weak and finally quit work on March 24, 1933.   His case was diagnosed as osteoarthritis of the spine with encroachments of spurs of bone upon the spinal cord.   The question of fact principally litigated was the causal relation between the disability which Larkin concededly has and the accident which he claims to have caused it.   It was the contention of plaintiff that the injury was not the proximate cause of the disability or at least that such a relation could only be established by speculation or guess.   There was a hearing before examiners of the Industrial Commission, and their findings were to the

effect that the work of defendant Larkin as athletic director over a period of more than twenty-four years contributed toward the development of arthritis in his spine; that shortly after the accident one of his arms started to pain him and was numb; that the applicant grew progressively worse and his left arm and leg became weak; that the accident was an incident which applicant's spinal cord could not stand because of long-continued constriction; that the applicant sustained injury under circumstances entitling him to compensation; and that his permanent disability was equivalent to twenty-five per cent of permanent disability. Petitions were duly made to the commission for a review of the findings and award of the examiners, and within ten days the commission, on August 8, 1935, set aside the findings of the examiners upon the ground of probable error, and required the defendants to answer the petition for review within ten days from the date of the order. Thereafter, on September 17, 1935, after a review of the entire record, the commission entered an order in which all of the findings of the examiners theretofore made and set aside were adopted, except that which fixed the percentage of permanent total disability at twenty-five per cent. The commission increased this percentage to fifty per cent.

The first contention of plaintiffs is that the Industrial Commission acted in excess of its powers in making the award without complying with the provisions of the statutes governing workmen's compensation. Since the contention is that the commission failed in several respects to comply with statutory provisions, it will be necessary further to subdivide plaintiffs' claims and to deal with them *seriatim*.

It is first asserted that the commission did not comply with sec. 102.18 (1), Stats., requiring the making and filing of findings of fact. This objection is addressed to the fact that the commission expressly adopted findings of the examiners

which had theretofore been set aside and did not make findings of its own. The objection is without merit. While the findings of the examiners were set aside and in legal contemplation did not constitute a determination, the commission, after a complete review of the record, could thereafter adopt as its own the wording of these findings. The matter is one of form rather than of substance.

It is next contended that the award of the Industrial Commission was not made within the time allowed by statute. This is based on sub. (4) of sec. 102.18, which was dealt with in *Wacho Mfg. Co. v. Industrial Comm., ante,* p. 312, 270 N. W. 63. This subsection empowers the commission to set aside, modify, or change its orders, findings, or awards within twenty days from the date thereof upon the grounds of mistake or newly-discovered evidence. This case is covered by sub. (3) which provides that within ten days after the filing of a petition to review, the commission may set aside the findings or order of an examiner in whole or in part, or direct the taking of additional testimony. In this case the order of the examiners was set aside and the parties directed to frame an issue looking to the taking of new testimony. The setting aside of the examiners' order restored the status, and the matter was completely open before the commission as though it had never been brought before the examiners at all. The statement in *Seaman Body Corp. v. Industrial Comm.* 214 Wis. 279, 252 N. W. 718, to the effect that "the only power which the commission has to set aside an award" is that conferred by sub. (4) of sec. 102.18, applies only to cases where the commission acts upon its own motion and has nothing to do with the situation where a petition to review has been filed and the proceedings are upon that petition.

It is next contended that the Industrial Commission based its award upon the report of an independent medical examiner

appointed contrary to law. Sec. 102.17 (1) (c), Stats., provides as follows :

"Whenever the testimony presented at any hearing indicates a dispute, or is such as to create doubt, as to the extent of disability, the commission may on its own motion or, if the employer or injured employee so requests, it may direct that the injured employee be examined by an impartial, competent physician designated by the commission who is not under contract with or regularly employed by a compensation insurance carrier or self-insured employer. The expense of such examination shall be paid by the employer. The report of such examination shall be transmitted in writing to the commission and a copy thereof shall be furnished by the commission to each party who shall have an opportunity to rebut the same on further hearing."

In accordance with this section, the commission appointed Dr. Bleckwenn to examine the applicant, but plaintiffs claim that Dr. Bleckwenn was called in not to determine the extent of disability, but to determine whether there was in fact any disability arising out of his employment. It is contended that the designation of Dr. Bleckwenn was not for a purpose authorized by the statute, and that since the appointment was contrary to law, an award based upon Dr. Bleckwenn's findings must fail. The vice of this argument is that it assumes that the commission is wholly disabled, in the absence of a dispute concerning the extent of disability from calling independent expert testimony. We do not so understand the law. There is no doubt that the qualifications and credibility of experts is for the commission to determine. *Wisconsin Granite Co. v. Industrial Comm.* 214 Wis. 328, 252 N. W. 155; *Hills Dry Goods Co. v. Industrial Comm.* 217 Wis. 76, 258 N. W. 336. There is no showing that Dr. Bleckwenn was under contract or regularly employed by a compensation insurance carrier, or self-insured employer, or any showing that he was in fact defendant's physician. Nor does the fact that his report

is broader than the extent of disability invalidate it or prevent the commission from considering it. Nor do we see in view of sec. 102.17 (1) (b), Stats., which gives the commission the authority to direct an employee claiming compensation to be examined by a regular physician and the results reported to the commission, how plaintiffs' objection can be sound. The essential requirement is that such *ex parte* testimony shall be reduced to writing, and that either party may have the right to rebut the same on final hearing. There is no contention that there was a violation of plaintiffs' rights in this respect.

Belonging literally to the class of objections heretofore discussed, but closely related to the claim that the award is not sustained by the evidence, is the contention that the crucial point of dispute in this case, namely, whether the accident proximately caused the disability, is a jurisdictional question with respect to which the findings of the commission are not conclusive. It is contended that sec. 102.03, Stats., specifies the following conditions of liability under the Workmen's Compensation Act: (1) Where a relation of employee and employer exists; (2) where an employer and employee are subject to the provisions of the act; (3) where the employee sustains an injury; (4) where at the time of the injury he is performing service incidental to his employment; (5) where the injury is not intentionally self-inflicted; (6) where the accident or disease causing injury arises out of his employment. As to all of these conditions, it is asserted that the finding of the commission as to the facts is not conclusive, although it is conceded that the commission must decide these questions at the time of the hearing upon a claim for compensation.

Two cases constitute the principal reliance of the plaintiffs and call for consideration in some detail. These are *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209, and *Crowell v.*

*Benson,* 285 U. S. 22, 52 Sup. Ct. 285. In considering these cases and their proper application to the present appeal, what is hereafter said is intended to apply only to the review of what may be called *quasi*-judicial findings of commissions to whom the statutes have committed the duty of finding facts after notice and hearing. This is to avoid the possibility of applying indiscriminately to the review of all forms of administrative action doctrines that may not be universally pertinent. See 80 Pennsylvania Law Review, 1055.

In the *Borgnis Case* this court said:

"Thus, in the case before us, the jurisdiction of the Industrial Commission to entertain any claim for compensation under the act rests upon two facts which must exist, viz.: (1) That both employer and employee have elected to come under the act, and (2) that the injury was received in service growing out of or incidental to the employment as the result of accident, and not of wilful misconduct."

It will be noted that, while the court here listed only two jurisdictional facts, the form of statement is such as to include the six facts claimed by plaintiffs to be jurisdictional in character. The court in the *Borgnis Case* states that the Industrial Commission must, of course, decide these questions whenever they are raised,—

". . . But it cannot decide them conclusively, for they are jurisdictional questions on which its right to act at all depends. They must be open to review in some court of competent jurisdiction, otherwise the parties would be denied due process of law. . . . If the act before us took away from the courts the power to consider these jurisdictional questions, either expressly or by necessary implication, the contention that judicial power had been vested in the commission, contrary to the command of the constitution, would be of greater force, but we think that the act does not do this, or attempt to do it."

The court then points out that provision is made for an action in the circuit court for Dane county in which the

board's award may be set aside upon any of three grounds: (1) That the board acted without or in excess of its powers; (2) that the award was procured by fraud; and (3) that the findings of fact do not support the award. The court regards the first subdivision as substantially the equivalent of the expression "without or in excess of its jurisdiction," as those words are used in *certiorari* actions to review the decisions of administrative officers and bodies.

At the outset, we are faced with the fact that no express attack is made upon the constitutionality of the Workmen's Compensation Act upon the ground that the review provided is insufficient to meet the demands of due process or to avoid the objection that judicial power has been unconstitutionally delegated. It is simply contended that the findings of the commission upon jurisdictional facts are not conclusive, and that they may not be made so without trespassing upon plaintiffs' constitutional rights. However, the implications of the contention are such as to require us to consider: (1) Whether the act provides for any form of review in which the reviewing court either weighs the evidence or gives a trial *de novo;* and (2) whether, if it does not, it violates constitutional requirements, (a) by denying due process, or (b) by invalidly delegating judicial power to the commission. Both questions are answered by the *Borgnis Case* adversely to plaintiffs, and unless the *Crowell Case* compels a reconsideration of the matter, plaintiffs' contention must be rejected. We accept without further discussion the conclusion in the *Borgnis Case* that all facts which constitute conditions of compensation are jurisdictional, that the jurisdictional facts are those listed in the portion of the opinion heretofore quoted, that the court is not concluded by the findings of the commission with respect to such facts, and that a review by the court consistent with the judicial process must be provided if constitutional objections to the act are to be avoided. The court in the

*Borgnis Case* held that the act was valid because it provided for such a review, and the character of this review was analyzed and found to be similar to that given upon *certiorari*. In *certiorari* to review administrative findings, there is neither a trial *de novo* nor a weighing of the evidence, and the findings are conclusive if the record discloses evidence to sustain them. *State ex rel. N. C. Foster Lumber Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *State ex rel. Milwaukee Medical College v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *State ex rel. Spritka v. Parsons,* 153 Wis. 20, 139 N. W. 825; *State ex rel. Althen v. Klein,* 157 Wis. 308, 147 N. W. 373; *State ex rel. Howe v. Lee,* 172 Wis. 381, 178 N. W. 471; *State ex rel. Schiewitz v. Wisconsin R. E. B. Board,* 188 Wis. 632, 206 N. W. 863; *State ex rel. Wasserman v. O'Brien,* 201 Wis. 356, 230 N. W. 59; *State ex rel. Bluemound Amusement Park v. Mayor,* 207 Wis. 199, 240 N. W. 847.

It will not be necessary here to cite all of the cases in this court which have held that findings of the commission, whether upon jurisdictional facts or not, are conclusive if the record discloses any evidence to support them. It is enough to state that the first of this long line of decisions (*Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 142 N. W. 271) grounded this doctrine upon two *certiorari* cases, *State ex rel. N. C. Foster Lumber Co. v. Williams* and *State ex rel. Milwaukee Medical College v. Chittenden, supra,* and purported to follow the rule in *certiorari.* Thus, we conclude that the compensation act neither provides nor as a condition of validity need prescribe a form of review that involves a trial *de novo* or a weighing of the evidence by the court where jurisdictional facts are involved; that the scope of review provided is that given upon *certiorari;* that such a review is consistent with the judicial process, affords due process, and avoids any constitutional objection to the delegation of judicial power to an administrative body. Such a

conclusion conforms to the practical necessities which have given rise to administrative tribunals. If courts are to weigh the evidence before commissions in reviewing their findings of so-called "jurisdictional" fact, the efficiency of administrative action will be greatly impaired. If it must give a trial *de novo,* the twilight of administrative law is at hand, for the proceedings before the administrative body will be but a perfunctory skirmish, the principal contribution of which will be delay.

The second case relied upon is *Crowell v. Benson,* 285 U. S. 22, 52 Sup. Ct. 285, 287. That case arose out of a proceeding for compensation under the Federal Longshoremen's and Harbor Workers' Compensation Act (33 USCA, § 901 *et seq.*). The defendant had brought compensation proceedings against petitioner alleging that he had been injured while in petitioner's employ and while performing services on navigable waters of the United States. Petitioner's answer denied that the relation of employer and employee existed between him and defendant. There was a hearing before a deputy commissioner of the federal employees' compensation commission who found that the injury occurred in the course of his employment and awarded compensation. Thereafter, petitioner brought a bill for injunction in the federal district court under section 21 (b) of the act providing for such proceedings. The award was contended to be contrary to law because the applicant was not in fact in petitioner's employ at the time of the injury and his claim, as a matter of law, not within the jurisdiction of the deputy commissioner. The district court held that the issue presented must be determined on wholly new evidence presented in court, and that the statute would be unconstitutional unless construed to provide for such a hearing *de novo.* Upon a trial *de novo,* the court found against the applicant and enjoined enforcement of the award. This was affirmed by the supreme court of the

United States, Mr. Chief Justice HUGHES writing the opinion. It was held:

"The act has two limitations that are fundamental. It deals exclusively with compensation in respect of disability or death resulting 'from an injury occurring upon the navigable waters of the United States' . . . and it applies only when the relation of master and servant exists."

As to the relation of master and servant, the court said that:

". . . It cannot be maintained that congress has any general authority to amend the maritime law so as to establish liability without fault in maritime cases regardless of particular circumstances or relations. . . . In the present instance, the congress has imposed liability without fault only where the relation of master and servant exists in maritime employment and, while we hold that the congress could do this, the fact of that relation is the pivot of the statute and, in the absence of any other justification, underlies the constitutionality of this enactment."

The court states that the question is one of the appropriate maintenance of the federal judicial power:

"It is the question whether the congress may substitute for constitutional courts, in which the judicial power of the United States is vested, an administrative agency—in this instance a single deputy commissioner—for the final determination of the existence of the facts upon which the enforcement of the constitutional rights of the citizen depend. The recognition of the utility and convenience of administrative agencies for the investigation and finding of facts within their proper province, and the support of their authorized action, does not require the conclusion that there is no limitation of their use, and that the congress could completely oust the courts of all determinations of fact by vesting the authority to make them with finality in its own instrumentalities or in the executive department. That would be to sap the judicial power as it exists under the federal constitution, and to establish a government of a bureaucratic character

alien to our system, wherever fundamental rights depend, as not infrequently they do depend, upon the facts, and finality as to facts becomes in effect finality in law."

For comment upon this case, see 41 Yale Law Journal, 1037; 50 Harvard Law Review, 78; 80 Pennsylvania Law Review, 1055.

It is asserted by the plaintiffs that the doctrine of the *Crowell Case* is binding and requires that a trial *de novo* upon jurisdictional facts must be accorded plaintiffs upon an appeal from an award by the commission, or at least that this court must weigh the evidence and set aside the award if the preponderance is against the finding of the commission. So far as the decision lays down the requisites of due process, we are bound to follow it; so far as it is merely addressed to the distribution of powers under the federal constitution, it is inapplicable here. A careful consideration of the decision leads us to the conclusion that it is addressed to the second point and not the first. As appears heretofore from the language of the opinion, the question there presented was the "appropriate maintenance of the federal judicial power in requiring the observance of constitutional restrictions." The irrelevancy of state laws and state citations is stated by the court to be apparent:

". . . A state may distribute its powers as it sees fit, provided only that it acts consistently with the essential demands of due process and does not transgress those restrictions of the federal constitution which are applicable to state authority."

In this connection, see 41 Yale Law Journal, 1037, at p. 1047.

So far as the question of due process may be contended to be involved in the *Crowell Case,* it must arise out of the view of the court that where jurisdictional facts have a constitutional source, the party against whom they are found is en-

titled to a trial *de novo* by the appropriate reviewing court. We deem it unnecessary to determine to what extent this doctrine is grounded upon due process and to what extent it is based upon the necessity of preserving the integrity of the federal judiciary. In either event, for reasons that will hereafter appear, we do not consider that the doctrine affects the result of this case. In considering the doctrine of *Borgnis v. Falk Co.*, we have heretofore been dealing with facts that are jurisdictional because made so by express statutory provision or derived by judicial construction out of statutes. The source of these jurisdictional facts is wholly statutory. It is held that if the type of review provided is in accordance with due process and warrants the conclusion that the administrative proceedings are subject to adequate judicial review, constitutional objections based either upon failure of due process or invalid delegation of judicial power fail.

With respect to jurisdictional facts of a purely statutory creation, it is extremely doubtful whether there is any fundamental difference between a finding of such facts by the commission and the findings of other facts not jurisdictional in character. It being within the power of the legislature to denominate the facts which shall be jurisdictional, it would seem that the character of the review provided as between these and such facts as are not declared to be jurisdictional would be a matter solely within the legislative discretion. In other words, if the legislature might expressly denominate all of these facts to be nonjurisdictional, it would seem to follow that it might declare a part of them jurisdictional and still provide the same character of review with respect to all facts found by the commission. The fact that the legislature is the source of the power to declare facts jurisdictional in accordance with its judgment would seem to make the distinction a barren one. The failure of the record to support any material fact found by the commission, either of the so-called

"jurisdictional" type or not, is a jurisdictional defect in the proceedings. The *Crowell Case* apparently holds to the contrary with respect to jurisdictional facts which are made so by the constitution. Such facts may for convenience be denominated constitutional facts. For example, in cases in which the power of congress depends upon the interstate commerce clause, a finding by a commission that the matter in hand involves interstate commerce is the determination of a fact without the existence of which congress may not legislate or the commission exercise any jurisdiction whatsoever. As to such facts, it appears to be the doctrine of the *Crowell Case* that the finding of the commission is not only not conclusive, but that upon appeal to the courts the person aggrieved by the finding is entitled to a trial *de novo* in order that the court may arrive at an independent conclusion as to the constitutional rights of the person appealing for its intervention.

As heretofore stated, we do not deem it necessary to determine whether the doctrine of the *Crowell Case* involves due process or whether it is merely intended to preserve the complete jurisdiction of the federal courts to deal with constitutional questions. We are satisfied that the case has no application here for the reason that the jurisdictional facts in question here have a purely statutory and not a constitutional source. More particularly, we are satisfied that the question of causal relation between the accident and disability is not a constitutional fact. While as an original proposition we should be inclined to hold that there is no difference in principle between constitutional and ordinary jurisdictional facts with respect to the character of review required, we do not deem it proper further to discuss this question for the reason that a reasonable contention may be made that the *Crowell Case* creates such a distinction, and that it is binding upon this court. Under these circumstances we prefer to defer

this determination until the matter is directly involved. As examples of the sort of case in which this distinction might be material, see *La Crosse Dredging Co. v. Industrial Comm., ante,* p. 308, 270 N. W. 62, and. *Chicago, M., St. P. & P. R. Co. v. Industrial Comm.* 217 Wis. 272, 258 N. W. 608.

In the *La Crosse Case* the applicant was employed by plaintiff as oiler upon a dredge, and it was plaintiffs' contention that the work was maritime in nature and therefore under the jurisdiction of the United States. In the *Chicago, M., St. P. & P. R. Co. Case* the question was whether the applicant was engaged, at the time of his injury, in interstate transportation or commerce. The question in each case had to do not with the jurisdiction of the commission under the Workmen's Compensation Act, but that of the commission, the legislature, and the state itself under the constitution of the United States. These examples are not intended to be exhaustive but are illustrative of the point involved.

It is our conclusion: (a) That the compensation act provides with respect to jurisdictional facts for a review of the same character and extent as that afforded by *certiorari;* (b) that this review satisfies the requirements of due process and avoids constitutional objections grounded upon the delegation of judicial power to a commission; (c) that these conclusions are not foreclosed by the doctrine of the *Crowell Case;* and (d) that this has been consistently held by this court since the enactment of the compensation act.

The court being of the view that it may not weigh the evidence before the commission upon the question of the causal relation of the accident to defendant's disability, the question is whether there is evidence to sustain the commission's finding in this respect. After a careful review of the record, we are satisfied that the evidence supports a finding that, while there was a pre-existing osteoarthritis, this condition was not disabling until the trauma resulting from the ac-

cident operated to make it so and to create a disability. What this court might do if it were to weigh the evidence is neither certain nor material. The fact that there is evidence to sustain the findings makes it impossible to disturb the award. This court has frequently found that the fact that there was a pre-existing physical condition without which there would not have been serious injury is immaterial. *Milwaukee v. Industrial Comm.* 160 Wis. 238, 151 N. W. 247; *Milwaukee E. R. & L. Co. v. Industrial Comm.* 212 Wis. 227, 247 N. W. 841; *Employers Mut. L. Ins. Co. v. Industrial Comm.* 212 Wis. 669, 250 N. W. 758; *Malleable Iron Range Co. v. Industrial Comm.* 215 Wis. 560, 255 N. W. 123.

The next contention is that a question as to the validity of the award is raised by the fact that the applicant improperly solicited the aid of a state senator, and that the latter wrote a letter to one of the commissioners urging the expeditious handling of the case and expressing the hope that something could be done in the case that "will be worth-while." The letter antedated the award and was in the files of the case. These facts fall far short of a showing of fraud on the part of the commission, and, indeed, there is no claim that such is their probative tendency. The claim is rather that this court should apply to the commission the same rules that are applied to jury trials in order to preserve the integrity of jury verdicts, and reverse a finding in any case where the conduct would have warranted reversal of a jury's verdict. See *La Valley v. State,* 188 Wis. 68, 205 N. W. 412; *Bangor v. Hussa Canning & Pickle Co.* 208 Wis. 191, 242 N. W. 565. This court has no such power. It may reverse only for fraud of the commission. *Buehler Bros. v. Industrial Comm.* 220 Wis. 371, 265 N. W. 227; *Pellett v. Industrial Comm.* 162 Wis. 596, 156 N. W. 956. Nor are the situations analogous. The commission constitutes a body of expert triers of fact—not a lay tribunal. It is to be supposed that it will not be

swayed by *ex parte* communications, and that it will be able to protect itself against importunities and requests that might bias a juror. We may express our disapproval of such requests and our assumption that the informality of administrative proceedings occasionally leads to the making of them without improper motives or full appreciation of the fact that they have no proper place in the proceedings, but these comments have no legal materiality. Jurisdiction to review the award is limited in this respect to cases of fraud on the part of the commission, and regulation of the conduct of parties and persons in such proceedings is committed to the commission and not to the court.

*By the Court.*—Judgment affirmed.