TIFFANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 29—May 25, 1937.*

188

For the appellants there was a brief by *Quarles, Spence &*
*Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson Burrus*

of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

ROSENBERRY, C. J. The evidence in this case, only the more material part being set out in the statement of facts, presents as complicated a case of employer-employee-independent contractor relationship as this court has been called upon to consider.

Plaintiffs contend that, the facts being without dispute, only a question of law is involved. Where, however, from the facts different inferences may be drawn, a question of fact rather than of law is presented. *Scott & Howe L. Co. v. Industrial Comm.* (1924) 184 Wis. 276, 278, 199 N. W. 159. In this case it is impossible merely by applying a rule of law to the evidence to reach a final determination in the matter. *Tesch v. Industrial Comm.* (1930) 200 Wis. 616, 229 N. W. 194. Before a rule of law can be applied in this case, it must first be ascertained who had control of the operation in which Moy was engaged. If we were to consider only the facts connected with the manufacture of lath applying rules of law we should be obliged to hold that Moy was an independent contractor, but these are not all of the facts. Moy was an employee of Tiffany in all other operations except the running of the lath mill. That is without dispute in the case. It is claimed that the arrangement made between Moy and Tiffany with respect to the manufacture of lath made him an independent contractor while he was engaged in that operation. However, certain facts appear in the case without dispute which tend to show that, although he had control of the operation, organized the crew, hired and fired the men, nevertheless the arrangement by which he received $2 per thousand less expenses was merely a method of fixing his compensation. Tiffany at times directed Moy

to shut down the mill and to take his men and make snow fence, in which operation he was admittedly an employee. When he wanted camps built for his lumbering operations he went to Moy and told him where to locate and build them. In performing that service Moy was admittedly an employee. When the National Recovery Act went into effect Mr. Tiffany, as he expressed it, "signed up." He then went to Moy and, without consulting him, told him that they were going to work eight hours a day and pay twenty-seven and one-half cents an hour and said:

"You finish out the week as you are, and next Monday morning start and tell your crew Monday morning the number of hours they are going to work and the wages they will receive and what each will cost them a week for board."

Prior thereto the men under Moy had been receiving $1 a day and board. No adjustment was made on the price to be paid Moy per thousand feet of manufactured lath. When asked whether he acquiesced in this arrangement, Moy replied:

"Well, sure, I went on and did just as he instructed me to, and naturally must have agreed to it."

Prior to the NRA arrangement Tiffany had been furnishing Moy's men with board at the rate of sixty cents a day. After the NRA he charged Moy $5.60 a week, this without any change in the contract price of $2 per thousand feet for manufactured lath or consultation with Moy. There were a number of other incidents of similar character.

These circumstances admit of one of two inferences, either that the ultimate authority was in Tiffany, and he had control of the entire operation, or that Tiffany was a dominating individual who, without the right to do so, merely ordered Moy to do things without consulting him. Certainly taking Moy's men from him without Moy's consent and instructing him to go under the NRA arrangement and directing him to quit operation of the lath mill and take up other work for

Tiffany are all acts inconsistent with the independent contractor relationship. As to going under the NRA act, Tiffany's counsel contend that he was merely advising Moy as to the law of the land and that he was not exerting any supervisory control. However, one of two inferences may be drawn from the evidence. Before a rule of law can be applied to the situation a choice must be made. This choice of inference under the evidence in this case makes the decision turn upon a question of fact and not a question of law. While, as the trial court said, the evidence is rather slim which supports the conclusion that Moy was an employee, however, the minds of reasonable men can come to different conclusions upon the evidence. Moy may as an employee have had all the authority with respect to the operation of the lath mill that plaintiffs contend he had and still be an employee. Tiffany may have given him authority to organize the crew, hire and fire men, fix their wages, and in general to superintend the operation, in which case he would be a mere employee. In this case we have the benefit of no formal contract either written or oral. There is merely evidence of an arrangement, and upon the evidence and circumstances of the case the determination of the court must rest. The defendants seek to avail themselves of the rule that there is a presumption that one is an employee when he is rendering service for another. *Habrich v. Industrial Comm.* (1929) 200 Wis. 248, 227 N. W. 877. That presumption is resorted to for the purpose of determining where the burden of proof lies, it merely appearing that one person is in the service of another. It does not compel the trier of fact to reach the conclusion except in the absence of evidence to the contrary from the opponent. 5 Wigmore, Evidence (2d ed.), § 2491.

It is considered that upon the evidence a question of fact was presented and that the determination of the commission having evidence to support it is conclusive. While Moy had

full control of the lath-mill operation, his whole service was ultimately subject to the direction and control of Tiffany. The arrangement under which the lath mill was operated was merely a method of fixing compensation.

In this case the matter was first heard before an examiner who on July 20, 1935, ordered the application to be dismissed. Within twenty days, and on August 8, 1935, a petition to review was filed. On August 9th, within the ten days provided in the statute, the commission made its order setting aside the examiner's award. The commission did not, however, at that time or at any subsequent time direct the taking of additional testimony. Plaintiffs contend that, the commission having failed within the ten-day period to direct the taking of additional testimony, it was without power or authority in that regard. Plaintiffs rely upon *Edward E. Gillen Co. v. Industrial Comm.* (1935) 219 Wis. 337, 263 N. W. 167. The appellant in that case sustained his injuries on November 13, 1931. His rights were determined therefore by the law as it stood in 1931. At that time sec. 102.18 (1), which controlled the case, read:

"The commission may on its own motion, set aside, modify or change its order, findings or award at any time within twenty days from the date thereof if it shall discover any mistake therein, or upon the grounds of newly-discovered evidence."

In the *Gillen Case* it was held that sub. (1) did not authorize the commission to set aside its order on the ground of mistake where no mistake was specified and none appeared in the record.

In 1933, sec. 102.18 was amended by inserting therein sub. (3), the material part of which is as follows:

"If no petition is filed within twenty days from the date that a copy of the findings or order of the commissioner or examiner was mailed to the last known address of the parties in interest, such findings or order shall be considered the findings or order of the industrial commission as a body,

unless set aside, reversed or modified by such commissioner or examiner within such time. . . . Within ten days after the filing of such petition with the commission the commission shall either affirm, reverse, set aside or modify such findings or order in whole or in part, or direct the taking of additional testimony."

Sub. (1) was rewritten but is not involved in this case.

The power of the commission to act under the quoted provision of sub. (3) is not limited to cases where there is a mistake. In *General A. F. & L. Assur. Corp. v. Industrial Comm.* (1937) 223 Wis. 635, 271 N. W. 385, it was held that the effect of an order of the commission setting aside an order of an examiner making an award pursuant to sub. (3) restores the status, and the matter is as completely open before the commission as though it had never been brought before the examiner at all.

Sub. (3) specifically provides that, where the commissioner or examiner sets aside his own order, the status shall be the same as prior to the findings or order set aside. This provision, however, does not in terms apply to the effect of an order of the commission itself setting aside an order of the examiner or commissioner.

We adhere to the determination made in *General A. F. & L. Assur. Corp. v. Industrial Comm.,* already referred to. It is considered that a proper construction of that part of sub. (3) of sec. 102.18, Stats. 1933, authorizing the commission to direct the taking of additional testimony is that if the order is not set aside or reversed, and the commission merely desires that additional testimony be taken, in that event such direction must be made within the specified time. In this case, however, the order was set aside and the employer required to answer the petition. Under such circumstances it is clear that the whole matter is open for consideration and the commission may proceed as it deems best. No order requiring the taking of additional testimony was necessary.

*By the Court.*—Judgment affirmed.