MILWAUKEE NEWS COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

MILWAUKEE NEWS COMPANY and another, Appellants, vs SAME, Respondents.

*December 11, 1936—March 9, 1937.*

For the appellant Milwaukee News Company there were briefs by *Morris Stern,* attorney, and *A. L. Skolnik* of counsel, both of Milwaukee, and oral argument by *Mr. Stern.*

*Harry V. Meissner* of Milwaukee, for the appellant Bankers Indemnity Insurance Company.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Librizzi there was a brief by *Mario A. Megna, Jr.,* and *William Shapiro,* both of Milwaukee, and oral argument by *Mr. Shapiro.*

The following opinion was filed January 12, 1937:

FRITZ, J.  Upon these appeals the principal ultimate questions are, (1) whether, at the time of his injury, Cono Librizzi was an employee of the Milwaukee News Company (hereinafter called the "News Company"), within the mean-

ing of sec. 102.07 (4), Stats.; and, if so, (2) whether he, as a fifteen-year-old minor, who was suffered or permitted to work illegally without a written permit issued pursuant to sec. 103.05, Stats., is entitled, under sec. 102.60 (1), Stats., to the payment of double the amount of compensation.

The evidence establishes that on August 8, 1931, Librizzi, while assisting Harry Simon in delivering newspapers for the News Company to its customers, was injured while riding on a truck owned and operated by Simon, who carried an automobile liability insurance policy; that in January, 1932, an application for the payment of workmen's compensation by the News Company was duly filed on behalf of Librizzi; that in April, 1932, his attorney applied for the dismissal of that application by consent, upon a stipulation stating that the relationship of employee and employer did not exist between Librizzi and the News Company, and Simon carried his own liability insurance covering the accident; that in response to a request by the Industrial Commission for details as to the reason for the dismissal, Librizzi's attorney stated that he had concluded that there was no relation of master and servant between the News Company and Librizzi, and that as that was an essential jurisdictional element he thought it advisable to dismiss the application, and had started an action against the News Company and Simon to recover damages for the personal injuries sustained by Librizzi by reason of Simon's negligent operation of his truck; that notwithstanding that stipulation the commission did not dismiss Librizzi's application for compensation; that subsequently his complaint in that action was voluntarily dismissed after the court held, upon a preliminary trial, that Simon's automobile liability insurance policy did not cover his truck; but that prior to that dismissal Librizzi had made statements under oath on an inquiry in respect to the proposed dismissal of his application for workmen's compensation, and also on direct and adverse examina-

tions in the court action, to the following effect: That from August 1, 1931, until his injury he rode voluntarily with Simon each morning; that he never met Simon at the News Company office, and had no regular place to meet him, and was not required to do so under their arrangement; and that Simon had never promised Librizzi anything for riding with him and there was no relationship of employee and employer between them.

In January, 1935, a hearing was requested on Librizzi's undisposed of application for workmen's compensation, and thereupon evidence was taken on that application by two of the Industrial Commission's examiners, who made findings and conclusions to the following effect: That prior to and at the time of Librizzi's injury, Simon delivered newspapers and magazines for the News Company as its employee, and received from it $45 per week for that service and the use of his truck, for which he furnished the necessary gasoline, oil, and repairs. That Aaron Trosch, an officer of the News Company, had employed Simon to work for it, and Trosch and George Ostendorf, another one of its employees, told Simon what and how to do that work, what stops he was to make and where to leave and to pile the newspapers and magazines; and that the News Company had full control of the details of the work performed by Simon, and he was an employee of that company. That at the time of his injury and for several weeks prior thereto Librizzi was "jumping stops" for Simon, who had requested the applicant to ride with him and "jump stops" for him, and in consideration of that help had, at times, given Librizzi small amounts of money and promised to use his influence to get a paper route for him as a newsboy and also to take him to Indianapolis; and that at the time of the accident Librizzi was in the employ of Simon and performing service for him growing out of an incidental to that employment. However, in addition

the examiners found and concluded that the News Company had no knowledge, actual or constructive, that Librizzi was helping Simon and that, therefore, that company was not liable for compensation under sec. 102.07 (4), Stats.

The Industrial Commission, upon a petition to review, approved the examiners' finding that Librizzi had been employed and paid by Simon, and had helped him in his work for the News Company and had been paid by him for that work. But the commission, contrary to the examiners' determination, found and concluded, on the one hand, that Simon was an independent contractor under the News Company, instead of being one of its employees, and that he was not subject to the compensation act, and did not carry compensation insurance; but that, on the other hand, Librizzi had worked on Simon's truck for approximately two months prior to his injury, and that his work brought him to the News Company's establishment where he assisted in cleaning up its place, in tying and carrying bundles of newspapers and magazines from Simon's truck, and he had waited for periods of an hour or more for the next delivery; that he had been given money for his work by Simon and also by the manager in charge of the News Company, and that through that manager and its treasurer, Trosch, the News Company saw Librizzi working both for Simon and also directly for it at various times; and that it had both actual and constructive knowledge that he was an employee of Simon at the time of his injury. Upon those facts and the commission's further findings that Librizzi was fifteen years of age, and had been employed, required, suffered, and permitted to work without a written permit issued under sec. 103.05, Stats., the commission concluded and ordered, on July 16, 1935, that he was entitled, under sec. 102.60, Stats., to the payment by the News Company and its compensation insurance carrier of double the amount otherwise recoverable. Separate actions were com-

menced by the employer and insurance carrier to review that award of July 16, 1935, and thereafter, on August 5, 1936, the Industrial Commission, on its motion, entered an order in which it stated,—

"It has now discovered a mistake in the finding that 'Simon was a contractor under the respondent Milwaukee News and that Simon was not subject to the Workmen's Compensation Act, nor did he carry compensation insurance covering his employee' as contained in the last three lines on the first page of the commission's findings of fact and order and also in the statement of the formal findings of fact contained on page two, 'that said Harry Simon was a contractor under the respondent Milwaukee News.'

"The commission amends its findings and order by striking out such findings and by substituting therefor the following finding:

" 'That said Harry Simon was an employee of the respondent Milwaukee News.'

"Except as amended, the commission reiterates the findings of fact and order made on July 16, 1935."

Another action was commenced to vacate that last order, and upon the entry of the judgments affirming the award, the plaintiffs appealed therefrom.

Under the facts as they were ultimately found by the commission, the alleged liability of the News Company for ordinary or simple (as distinguished from double) compensation, under the Workmen's Compensation Act, depends upon whether Librizzi can be considered an "employee" of the News Company as an employer, under the provision in sec. 102.07 (4), Stats., that the word "employee" as used in ch. 102, Stats. 1931, means, in addition to "Every person in the service of another under any contract of hire, express or implied," also "all helpers and assistants of employees, whether paid by the employer or the employee, if employed with the knowledge, actual or constructive, of the employer" (with certain exceptions which are immaterial here). There-

fore, in view of that definition, the crucial issues of fact herein are, (1) whether, at the time of the accident, Simon was an employee of the News Company and not an independent contractor; (2) whether Librizzi was a helper or assistant of Simon in the latter's employment as an employee of the News Company, and was paid by Simon or that company; and (3) whether Librizzi's help or assistance in that respect was rendered with the knowledge, actual or constructive, of that company. In relation to the first of those issues, the evidence amply sustains the finding that Simon was an employee of the News Company, because it retained and exercised full control and supervision of the work which he did for it. Although he owned the truck and paid for the expenses incurred in operating it in his employment for the News Company at the salary of $45 per week, he was told what work to do and how to do it, what stops to make and where to deliver and to place newspapers and magazines, by the News Company's treasurer Trosch, and its employee Ostendorf, who was in charge of making out the magazine orders and the route lists of its customers to whom they were to be delivered, and handing them to its drivers including Simon. In view of those facts as to the supervision and control exercised by the News Company over Simon's work, he was its employee and not an independent contractor. *Kolman v. Industrial Comm.* 219 Wis. 139, 141, 262 N. W. 622; *Allaby v. Industrial Comm.* 200 Wis. 611, 614, 229 N. W. 193; *Connor L. & L. Co. v. Industrial Comm.* 203 Wis. 85, 233 N. W. 559; *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117.

Likewise, there was ample evidence to establish the finding that for several weeks Librizzi was a helper or assistant of Simon in his employment for the News Company, and that Librizzi occasionally was given money therefor by Simon. Whether Librizzi's status was that of an employee of Simon

under a contract of hire as was concluded by the examiners, or merely that of a helper or assistant receiving money occasionally as a tip, is more debatable. But, regardless of what his exact status in that respect may have been, it suffices that in either event he was in fact helping or assisting Simon in his work as an employee of the News Company, and receiving money therefor from him.

Although the commission's finding that the News Company had both actual and constructive knowledge that Librizzi was an employee of Simon at the time of the injury was contrary to the examiners' finding in that respect, the fact that the News Company had actual or at least constructive knowledge that Librizzi was a helper or assistant of its employee, Simon, was warranted by credible evidence to the following effect: During several weeks preceding Librizzi's injury, four other boys (who assisted other drivers employed by the News Company) had frequently seen him unloading and assisting Simon in unloading newspapers and magazines from the latter's truck onto the News Company's platform and take them into its place of business, and had also seen him sweeping and cleaning up in that place, usually in the presence of Ostendorf, who told Librizzi to bring in the unloaded papers and magazines and to sweep and clean up, and who had given him fifteen cents to twenty-five cents for that work, and had also handed a slip to him for a magazine delivery to a customer, with directions to give it to Simon; and that occasionally Trosch had also seen Librizzi assisting Simon downstairs, and had sometimes also told Librizzi to do certain work. Although Ostendorf and Trosch denied those matters, and they are in conflict with some former testimony by Librizzi, those denials and conflicts merely resulted in issues of fact to be determined by the commission, and as there was evidence, which, if considered credible, sustains its findings, they must be permitted to stand.

Consequently, as under the facts as they were finally found by the commission, Librizzi, as well as Simon, was an employee of the News Company within the meaning of the word "employee" as it is enlarged by the definition in sec. 102.07 (4), Stats., so as to include all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer, Librizzi was entitled as such an "employee" to be paid the compensation benefits provided for in the act by the News Company. *Clark v. Industrial Comm.* 197 Wis. 597, 222 N. W. 823; *Sheboygan v. Industrial Comm.* 202 Wis. 420, 232 N. W. 871.

In connection with contending that the commission erred in making the award under review, the appellants also claim that because the commission did not point out the specific grounds of a mistake, there cannot be sustained the final order of August 5, 1936 (quoted above), in which it attempted to amend its findings and order of July 16, 1935, by substituting for its former finding that Simon was an independent contractor a finding that he was an employee of the News Company. In support of that claim appellants rely upon the rule stated in *Edward E. Gillen Co. v. Industrial Comm.* 219 Wis. 337, 342, 263 N. W. 167, 169, that,—

". . . Orderly procedure requires the commission, when it sets aside, modifies, or changes its orders, findings, or awards, to indicate the nature of its mistake, as it has no power so to act unless it has discovered what is in fact a mistake."

Due compliance with that rule would generally require more in correcting a mistake under sec. 102.18 (4), Stats., than merely such a statement as the commission made herein, viz., that,—

"It has now discovered a mistake in the finding that 'Simon was a contractor under the' News Company."

However, in this instance the fact that the commission did make a mistake in that respect is so obvious that it is virtually conceded by the statement in one of the appellant's briefs that,—

"When on July 16, 1935, the commission found that Harry Simon was an independent contractor it disregarded entirely the testimony of record that Simon worked under the supervision and control of Mr. Trosch, the manager of the Milwaukee News, and that his route lists were subject to revision from day to day and that he received continuous instructions with reference to the delivery service he was rendering to the Milwaukee News."

Inasmuch as it is clearly obvious that the commission did make a mistake, and its statement in its amending order that "it has now discovered a mistake" was followed by specifying the words to be stricken and those which were to be substituted therefor, there was sufficient indication as to the nature of the mistake to warrant and sustain the order by which it was corrected.

Appellants also contend that because there was no proof as to Librizzi's earning ability at the age of twenty-seven years, the commission erred in making the award upon the basis of its finding "that upon attaining the age of twenty-seven, had he not been injured, applicant would have earned a wage entitling him to compensation for the maximum rate." That contention cannot be sustained. In sec. 102.11 (3), Stats., which prescribes that the method for computing indemnity to accrue for permanent disability in the case of an injured employee who is under twenty-seven years of age shall be on the basis of his weekly earnings, that he, if not disabled, would probably earn after attaining the age of twenty-seven years, it is also provided that,—

"Unless otherwise established his earnings shall be taken as equivalent to the amount upon which maximum weekly indemnity is payable."

Thus, by reason of the presumption prescribed by the latter provision, the commission was required to find, in the absence of any proof as to what Librizzi would probably earn after attaining the age of twenty-seven years, that upon attaining that age he would have earned a wage "equivalent to the amount upon which maximum weekly indemnity is payable." As that was, in effect, the commission's finding, it did not err in that respect.

The News Company also contends that even if by virtue of the meaning of the term "employee," as defined in sec. 102.07 (4), Stats., Librizzi must be considered, as a matter of law, an employee of the News Company, that nevertheless the commission erred in holding that he was entitled to the payment of double the amount of compensation by the News Company, because in point of fact its status in respect to him was not that of an "employer" under contract, express or implied. It contends that secs. 102.60 and 102.62, Stats. 1931,—providing, respectively, for double the amount of compensation, and that the employer's liability therefor shall be primary,—are penalty statutes and must be strictly construed, and therefore, even if sec. 102.07 (4), Stats. 1931, is applicable to Librizzi's status, as the News Company was not in fact his employer, he was not its employee within the meaning of secs. 102.60 and 102.62, Stats. 1931, because under them there is contemplated a direct employer, in fact, and the penalty of double the amount of compensation can be imposed only on such an employer. Upon considering the several statutory provisions involved in those contentions, we have concluded that they cannot be sustained. As stated above, because Librizzi assisted Simon in his work as an employee of the News Company, with the latter's knowledge, actual and constructive, and received money therefor from Simon, he was, under and by virtue of sec. 102.07 (4), Stats., an "employee," as a matter of law, of the News Company within the meaning of that term as it is used anywhere in

the compensation act, even though, but for that definition, the News Company would not in fact be the employer of such an assistant because of the absence of a contract of hire between them. Regardless of the fact that ordinarily the status of employer and employee is dependent upon the existence of such a contract, express or implied, all assistants and employees of the employee, who was assisted under such circumstances as existed in this case in respect to Librizzi and Simon at the News Company, are within the compensation act, and the assistant is as fully entitled to the payment of all benefits thereunder by the employer as is the employee who was assisted.

The provision in sec. 102.60, Stats., in respect to double compensation for minors illegally employed reads:

"When the injury is sustained by a minor illegally employed, compensation and death benefits shall be as follows: (1) Double the amount otherwise recoverable, if the injured *employee* is a minor of permit age, and at the time of the injury is employed, required, suffered or permitted to work without a written permit issued pursuant to section 103.05, except as provided in subsection (2)."

By giving the word "employee," where it is used in that section, the plain and unambiguous meaning which sec. 102.07 (4), Stats., prescribes that it shall have as it is used in ch. 102, that word where it is used in sec. 102.60, Stats., and all provisions therein are clearly applicable to Librizzi and the News Company, in so far as the status of each as an employee and an employer, respectively, is concerned. Consequently, as Librizzi, under the facts herein, must be considered an "employee," as a matter of law, of the News Company, the fact that he, as a minor of permit age, who had no permit under sec. 103.05, Stats., was "suffered or permitted" by that company to assist Simon, with its knowledge, actual or constructive, in performing work for it, is sufficient to render it as an employer, as a matter of law, liable to Librizzi under

sec. 102.60, Stats., for double the amount of compensation. It suffices to render an employer liable for that double amount under that statute that he suffered or permitted a minor of permit age, who had no permit issued under sec. 103.05, Stats., to work by assisting an employee of the employer with the latter's knowledge, actual or constructive. Neither proof of intent on the part of an employer to illegally employ the minor, nor actual knowledge of the lack of a permit, or the existence of circumstances under which knowledge could be presumed is essential or involved in order to constitute the employer's conduct a violation of sec. 103.05 (4), Stats., under these statutes. The inhibition thereunder is not solely that no child required to have a permit "shall be employed," but is that no such child "shall be employed, or *permitted to work* at any time in any factory . . . mercantile establishment . . . or the delivery of any merchandise, or at any gainful occupation, or employment, directly or indirectly. . . ." Likewise, in sub. (7) of that section it is provided,—

"Every employer employing or *permitting a minor* to work as provided in this section shall:

"(a) Receive and file the permit before the minor is permitted to do any work. . . ."

Thus, an employer may violate sec. 103.05, Stats., if he but *permits* a minor who has no permit to work in his establishment or to deliver any merchandise; and neither the absence of intent to illegally employ or permit such minor to work, nor of actual or constructive knowledge of the lack of such a permit constitutes an excuse in law for the reason that the statute expressly requires every employer "employing or permitting" such a minor to work to "receive and file the permit before the minor is permitted to do any work."

The News Company further contends that it cannot be held to have violated sec. 103.05, Stats., because in respect to Librizzi it cannot be considered the employer as that term is defined in sec. 101.01 (3), Stats., which definition is made ap-

plicable by sec. 103.05 (1), Stats., to secs. 103.05 to 103.15, Stats. It is contended that because that definition reads,— "The term 'employer' shall mean and include every person, . . . having control . . . of any employment, place of employment or of any employee," the element of having control of the employee is the outstanding essential in the definition of the word "employer," as it is defined in sec. 101.01 (3), Stats., and is used in sec. 103.05, Stats. However, even if that matter of control is an essential in that definition, it does not follow under the facts herein that the News Company was not an employer within the terms of that definition, in respect to Librizzi. In so far as Simon as its employee, and his employment, and Librizzi in assisting him as such an employee and in his employment are concerned, the News Company certainly had full control as to the employment and the "employee." All of its control of Simon as its "employee" and of his "employment" extended likewise to what Librizzi did in assisting Simon in that employment.

On the other hand, the applicant contends that the commission erred in not awarding treble compensation to him. He brought no action to set aside the commission's award in that respect. Neither did he appeal from the judgment affirming the award, or serve any notice under sec. 274.12, Stats., to review that judgment until on November 25, 1936, which was after the cases had been set for hearing in this court. Under those circumstances the service of his notice to review was too late to entitle him to a review because it was not served "before the case is set down for hearing in the supreme court," as is required by sec. 274.12, Stats.

*By the Court.*—Judgments affirmed.

A motion for a rehearing was denied, with $25 costs in one case only, on March 9, 1937.