Jane A. BEARD, individually and as surviving spouse of Charles R. Beard, Plaintiff-Appellant-Petitioner,

v.

LEE ENTERPRISES, INC., The La Crosse Tribune, and Liberty Mutual Insurance Co., Defendants-Respondents.

Supreme Court

*No. 96–3393. Oral argument November 10, 1998.—Decided April 9, 1999.*

(Also reported in 591 N.W.2d 156.)

1

3

4

For the plaintiff-appellant-petitioner there were briefs by *John P. Stuber* and *Sauer, Becker, Flanagan & Lynch, Ltd.*, LaCrosse and oral argument by *John P. Stuber.*

For the defendants-respondents there was a brief by *Gregory J. Egan, Gerard O'Flaherty* and *Parke O'Flaherty, Ltd.*, LaCrosse and oral argument by *Gregory J. Egan* and *Gerard O'Flaherty.*

¶ 1. JON P. WILCOX, J. Jane A. Beard seeks review of an unpublished court of appeals decision affirming the summary judgment entered by the Circuit Court for La Crosse County, Michael J. Mulroy, Judge, which dismissed her negligence suit against The La Crosse Tribune, Lee Enterprises, Inc., which owns the newspaper, and Liberty Mutual Insurance Company, their insurer (collectively "The Tribune"). On appeal, Beard argues that Anthony Kropelin, a minor at the time, was employed by The Tribune and that he was working in a street trade, as defined under Wis. Stat. § 103.21(1)(1991–92),[1] during prohibited hours when he was involved in a head-on collision that killed Beard's husband, Charles. Beard contends that as Anthony's employer, The Tribune is absolutely liable for allowing him to work in violation of the child labor laws.

¶ 2. Based on the statutory scheme regulating street trades, Wis. Stat. §§ 103.21 to 103.31, as well as related statutes, in particular Wis. Stat. § 102.60(7), we conclude that the legislature envisioned some

---

[1] All statutory references are to the 1991–92 version of the statutes unless otherwise noted.

degree of knowledge, actual or constructive, on the part of the employer about an alleged employment relationship with a minor involved in a street trade before liability can attach. Because there is a factual question whether The Tribune had knowledge, actual or constructive, that Anthony was delivering materials for The Tribune, we reverse the circuit court's judgment.

## I.

¶ 3. We first set forth the facts of the case. According to portions of his deposition testimony, Anthony Kropelin, who was sixteen at the time in question, frequently accompanied his father, Douglas, to The Tribune to pick up bundles of newspapers from employees at The Tribune's distribution center. Douglas had a bundle delivery agreement with the newspaper for which he was paid by The Tribune on a per trip basis for his distribution services.[2] Anthony often assisted his father in delivering the bundles for which Douglas paid him.

¶ 4. Shortly before midnight on Thursday, July 9, 1992, Anthony and a friend drove his father's van to The Tribune to pick up the bundles of newspapers. He "talked to the guys at the distribution tower for a while," and then received his bundles and delivered

---

[2] Under the agreement, Douglas was not required to purchase the newspapers he distributed, or collect money for the papers from the individual carriers, merchants or vending machines to which he distributed the papers. Rather, each Friday Douglas consulted with the north side distribution manager to update the number of bundles to be delivered and to whom. Any complaints or requests regarding his delivery were funneled through the distribution manager. Douglas considered the people to whom he distributed the bundles to be The Tribune's customers.

them. At approximately 3:00 a.m. on July 10, 1992, Anthony returned to The Tribune to pick up bundles of the paper's Sunday supplement for his father to deliver to the route carriers for the upcoming Sunday edition. At that time, Anthony also picked up the Friday morning newspapers for his brother, James, who was a carrier for The Tribune, and then delivered the papers to the houses on James's carrier route.[3] Anthony finished that delivery at approximately 4:00 a.m.

¶ 5. After finishing James's route, Anthony began to drive back home with the Sunday supplements still in the van. At approximately 4:15 a.m., Anthony struck a vehicle driven by Beard's husband, Charles. Charles died as a result of injuries suffered in the accident.

¶ 6. In July 1993, Beard, as a surviving spouse, executed a *Pierringer*[4] agreement releasing Anthony from liability. Beard then filed suit against The Tribune. In her amended complaint, she alleged absolute liability for illegally employing a minor during prohibited hours, common law negligence for using a minor lacking sufficient age, experience, maturity or training to perform such work, and liability for Anthony's negligence under the theory of respondeat superior.

¶ 7. The Tribune filed a motion for summary judgment which the circuit court granted. The circuit court found that: (1) at best, Anthony was in an employment at the time of the subject collision; (2) the

---

[3] James's route was part of another carrier's route. James asked customers to pay The Tribune for the papers and The Tribune gave him a percentage of that amount collected. A street trades permit was filed with The Tribune for James, but not for Anthony.

[4] *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

*Pierringer* release acts to bar all claims against The Tribune based upon either vicarious liability or respondeat superior; and (3) there is no independent cause of action in favor of a third-party based upon a violation of the child labor laws. The court dismissed the case and Beard appealed.

¶ 8. A majority of the court of appeals affirmed.[5] The majority determined that without any evidence that The Tribune exercised control over the method or route of Anthony's travel home, he was acting outside the scope of his employment; therefore, The Tribune could not have violated, or be held liable for violations of, the child labor laws. *Beard v. Lee Enterprises, Inc.*, No. 96–3393, unpublished slip op. at 7 (Wis. Ct. App. Sept. 25, 1997). The majority noted that without employer control, Anthony could not be an employee of The Tribune even under the street trades law. *Id.* As to Beard's common law negligence claim, the majority determined, as a matter of law, that The Tribune could not be held liable for permitting Anthony to deliver newspapers before 5:00 a.m. because he was a minor, licensed to operate a motor vehicle at any time under Wis. Stat. § 343.06(1). *Beard*, unpublished slip op. at 9. Beard petitioned this court for review.

II.

¶ 9. Next, we set forth the standard of review. We review summary judgment rulings independently using the same methodology as that used by the circuit court. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294

---

[5] At the appellate level, Beard has abandoned her claim of liability against The Tribune under the theory of respondeat superior. The court of appeals did not address it.

8

N.W.2d 473 (1980). A motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 10. This case involves the interpretation of Wis. Stat. § 103.21, and related statutes. Statutory interpretation and the application of a statute are questions of law that we review independent of the circuit court and court of appeals. *Colby v. Columbia County*, 202 Wis. 2d 342, 349, 550 N.W.2d 124 (1996).

### III.

¶ 11. The case before us concerns an alleged violation of the child labor laws. An employer who violates the child labor laws is absolutely liable for injuries resulting from the violation. *D.L. v. Huebner*, 110 Wis. 2d 581, 640, 329 N.W.2d 890 (1983); *see also Ludke v. Burck*, 160 Wis. 440, 443, 152 N.W. 190 (1915). Absolute liability is proper if the plaintiff can prove that: (1) the employer violated the statute at or about the time of the injury; and (2) the injury occurred. *Huebner*, 110 Wis. 2d at 640. The injured party must also be within the protected class of people, i.e., the minor, other employees or frequenters. *McGarrity v. Welch Plumbing, Co.*, 104 Wis. 2d 414, 427, 312 N.W.2d 37 (1981); *see also* Wis. Stat. § 103.65.

¶ 12. In order for there to be a violation of the child labor laws, there must be an employer/employee relationship. Beard argues that under the street trades definition in Wis. Stat. § 103.21(1), The Tribune had an employer/employee relationship with Anthony. Section 103.21(1), provides:

9

Every minor selling or distributing newspapers or magazines on the streets or other public place, or from house to house, is in an "employment" and an "employe," and each independent news agency or (in the absence of all such agencies) each selling agency of a publisher or (in the absence of all such agencies) each publisher, whose newspapers or magazines [the minor] sells or distributes, is an "employer" of the minor. Every minor engaged in any other street trade is in an "employment" and an "employe," and each person furnishing [the minor] articles for sale or distribution or regularly furnishing [the minor] material for blacking boots is [the minor's] "employer".

■

¶ 13. When interpreting a statute, we must ascertain and give effect to the intent of the legislature. *Sullivan v. Waukesha County*, 218 Wis. 2d 458, 464, 578 N.W.2d 596 (1998). In determining legislative intent, we first look to the language of the statute to determine whether its meaning is clear. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 163, 558 N.W.2d 100 (1997). If the language is clear, we are prohibited from looking beyond such language to ascertain its meaning. *Id.* If, however, the statute is ambiguous, this court must look beyond the statute's language and examine the scope, history, context, subject matter, and purpose of the statute. *State v. Sweat*, 208 Wis. 2d 409, 415, 561 N.W.2d 695 (1997), quoting *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 281–82, 548 N.W.2d 57 (1996).

■

¶ 14. A statutory provision is ambiguous if reasonable minds could differ as to its meaning. *Sweat*, 208 Wis. 2d at 416. "Ambiguity can be found in the words of the statutory provision itself, or by the words

of the provision as they interact with and relate to other provisions in the statute and to other statutes." *Id.* When construing a statute, the entire section and related sections are to be considered in its construction or interpretation. *Id.*; *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982).

■■

¶ 15. Beard urges that under Wis. Stat. § 103.21(1), an employment relationship existed between Anthony and The Tribune through Anthony's distribution of the paper's newspaper bundles. We agree that § 103.21(1), standing alone, clearly creates such an employment arrangement.[6] However, ambiguity in a statute can be created by the interaction of two separate statutes, as well as by the interaction of words and structure of a single statute. *Sweat*, 208 Wis. 2d at 417.

¶ 16. We conclude that Wis. Stat. § 103.21(1) becomes ambiguous when read in conjunction with Wis. Stat. §§ 103.21 to 103.31, and related statutes, particularly Wis. Stat. § 102.60(7). Section 103.21(1) makes no reference to knowledge, actual or constructive, on the part of the employer. Yet two other statutes governing street trades, Wis. Stat. §§ 103.25 and 103.27, seem to require some degree of knowledge on the part of the employer.[7] Section 103.25(1) requires

---

[6] Under Wis. Stat. § 103.21(1), a minor (Anthony) who distributes newspapers (in bundles) in a public place or from house to house is an "employe," and is in an "employment" relationship with either the independent news agency (none), a selling agency (none) or the publisher (The Tribune) of the newspapers the minor (Anthony) distributes. The provider (The Tribune) of the newspapers is the "employer."

[7] Statutes which are contained in the same chapter and assist in implementing the chapter's goals and policy should be

the employer to obtain a street trade permit before a minor may be employed or permitted to work, and § 103.27(1) and (2) obligates the employer to keep a record on file for each minor authorized to work in a street trade. Knowledge is implicit in the requirement that an employer obtain and keep a record on file for each minor employed in a street trade. Because § 103.21(1) makes no mention of knowledge, we conclude that it is ambiguous.

¶ 17. Again, when the language of the statute is ambiguous when construed in light of related statutes, this court looks to the "scope, history, context, subject matter, and purpose of the statute." *Sweat*, 208 Wis. 2d at 417. We conclude, based on the scope, history, context, subject matter, and purpose of Wis. Stat. § 103.21(1), implicit in the employer/employee relationship involving a publisher, or an intervening agency, and a minor involved in a street trade, is some degree of knowledge, actual or constructive, on the part of the employer as to whom it is employing.

¶ 18. There is no explanation in the legislative drafting record whether knowledge, actual or construc-

read *in pari materia* and harmonized if possible. *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982); *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 165–66 n.11, 558 N.W.2d 100 (1997). *In pari materia* refers to statutes relating to the same subject matter or having the same common purpose. BLACK'S LAW DICTIONARY 791 (6th ed. 1990). As a rule of statutory construction, *in pari materia* requires a court to read, apply and construe statutes relating to the same subject matter together. *Id.* The child labor laws are to be viewed as one cohesive enactment, *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 427, 312 N.W.2d 37 (1981), and should be read *in pari materia*.

tive, on the part of the employer is relevant to finding an employee/employer relationship under Wis. Stat. § 103.21(1). However, the origins of this statute, and related provisions, combine to show that the legislature intended to allow for an employer to establish that the minor was employed without the employer's actual or constructive knowledge.

¶ 19. Earlier case law specifically held that knowledge, actual or constructive, was not required for a violation of Wis. Stat. § 103.05 (1931) (the old permit statute). *Milwaukee News Co. v. Industrial Comm'n,* 224 Wis. 130, 143, 271 N.W. 78 (1937). *Milwaukee News* involved a worker's compensation claim by a minor who was injured while riding in the truck of an employee of the news company during the delivery of newspapers. *Id.* at 133.

¶ 20. The court found that the minor was an assistant or helper of the news company's employee, and as such was entitled to the payment of all benefits by the employer as was the employee who the minor assisted. *Id.* at 142. The court determined that the employer was liable for double compensation, under Wis. Stat. § 102.60 (1931), for allowing a minor of permit age, who had no permit under Wis. Stat. § 103.05 (1931), to assist an employee of the employer. *Milwaukee News,* 224 Wis. at 143. The court concluded that an employer may violate § 103.05 "if he but *permits* a minor who has no permit. . .to deliver any merchandise; and neither the absence of intent to illegally employ or permit such minor to work, nor of actual or constructive knowledge of the lack of such a permit constitutes an excuse in law. . . ." *Milwaukee News,* 224 Wis. at 143.

¶ 21. *Milwaukee News* was decided in January 1937. By March 1937, legislation was proposed specifi-

cally relating to newsboys. The newspapers sought to create a new subsection (7) to Wis. Stat. § 102.60 (1935) that would exempt publishers and distributors of newspapers from liability if the corporation (person, firm) "took reasonable precaution to see that the requirements of chapter 103 in regard to street sales by minors were complied with." 1937 S.B. 379. Section 102.60(7) was not adopted under the final version of the bill approved in May 1937. *See* § 1, ch. 162, Laws of 1937 (adding newsboys as employes covered under the worker's compensation law).

¶ 22. However, by July 1937, the addition of subsection (7) to Wis. Stat. § 102.60 (1935), relating to compensation for minors who are illegally employed in street trades, was approved, albeit with slightly different language. *See* § 2, ch. 401, Laws of 1937 (creating new regulations for street trades to provide coverage for minors working as newsboys). Section 102.60(7) read:

> The provisions of subsections (1) to (6) of section 102.60 shall not apply to employes as defined in subsection (6) of section 102.07 [street trades] if the agency or publisher shall establish by *affirmative proof* that at the time of the injury the employe was not employed with the *actual or constructive knowledge* of such agency or publisher. [Emphasis added.]

Section 2, ch. 401, Laws of 1937. By allowing affirmative proof from the employer that the minor was not employed with the actual or constructive knowledge of the employer, this subsection as enacted directly contravenes the decision in *Milwaukee News*, and appears to be in direct response to that decision.

¶ 23. While Wis. Stat. § 102.60(7) (1995–96) still allows affirmative proof that the minor was not

14

employed with the actual or constructive knowledge of the employer, it appears that the child labor laws (ch. 103), which are the basis for a § 102.60 claim, do not. ■

¶ 24. Apparently conflicting provisions of law should be construed so as to harmonize them and thus give effect to the leading idea behind the law. *Sweat*, 208 Wis. 2d at 422 (harmonizing Wis. Stat. §§ 973.20 and 939.74). Reading Wis. Stat. § 103.21(1) in harmony with Wis. Stat. § 102.60(7), the worker's compensation statute applicable to minors who are illegally employed, we conclude that an employment relationship between a minor involved in street trades and the agency or publisher employer does not exist under § 103.21(1) when the minor was employed without actual or constructive knowledge of the agency or employer. This comports with the legislature's desire to protect the minor, other employees and frequenters from the unregulated employ of minors in hazardous occupations, *see Huebner*, 110 Wis. 2d at 636; *McGarrity*, 104 Wis. 2d at 427, without imposing an impossible burden on the publishers of newspapers.

¶ 25. In addition, it is unreasonable to assume that the legislature intended to allow the employer to present an affirmative defense for an unwitting violation of the child labor laws in response to a worker's compensation claim, but not for other alleged violations.

¶ 26. This interpretation is also consistent with other provisions relating to street trades which must be read in pari materia. As previously explained, Wis. Stat. §§ 103.25(1) and § 103.27(1) & (2) obligate the employer to obtain and keep a record on file for each minor employed in a street trade. These provisions imply actual knowledge on the part of the employer.

However, an employer cannot simply ignore unpermitted minors and claim that because no street trades permit was filed, it had no actual knowledge. Rather, we conclude that as with Wis. Stat. § 102.60(7), constructive knowledge, if proven, may be sufficient as well.

¶ 27. If we were to hold an employer absolutely liable based on a relationship under Wis. Stat. § 103.21(1), without requiring some degree of knowledge on the part of the employer, Wis. Stat. §§ 103.25 and 103.27 would be rendered superfluous and absurd situations would result. Both outcomes are to be avoided. *State v. Koopmans*, 210 Wis. 2d 670, 678, 563 N.W.2d 528 (1997); *Lake City Corp.*, 207 Wis. 2d at 162. For these reasons, we conclude that knowledge, actual or constructive, is implicit in the employer/employee relationship involving a publisher, or an intervening agency, and a minor involved in a street trade under § 103.21(1), on the part of the employer as to whom it is employing.

¶ 28. In this case, there is conflicting testimony as to the degree of knowledge, if any, that The Tribune had relating to Anthony's distribution of newspapers and newspaper bundles. Anthony stated that on the night of the accident, he talked with the guys at the distribution tower for a while before he received and delivered the bundles. The Tribune however did not have a street trades permit for Anthony on file, nor did it pay Anthony for his work. Because there is a factual question whether The Tribune had knowledge, actual or constructive, that Anthony was delivering materials for his father or brother, we conclude that summary

judgment is inappropriate. Accordingly, we reverse the circuit court's judgment.

## IV.

¶ 29. If it is determined that The Tribune had knowledge, additional questions will need to be answered, such as whether The Tribune violated the statute *at or about* the time of the injury. *Huebner*, 110 Wis. 2d at 640. If The Tribune did, then the street may be Anthony's place of employment and Charles Beard, a third party, may be within the protected class of people under the child labor laws. *McGarrity*, 104 Wis. 2d at 427. Because there is a distinct possibility that these questions will arise and because the parties have thoroughly briefed the issues, we will address them in the interest of promoting judicial efficiency and prompt adjudication. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 478–79, 326 N.W.2d 727 (1982).

## A.

¶ 30. Even if The Tribune had actual or constructive knowledge of Anthony's employment, there still is a question whether Anthony was working *in violation* of the child labor laws[8] *at or about* the time of the

---

[8] The Department of Industry, Labor and Human Relations (DILHR) has determined reasonable hours of employment for minors as well as prohibited types of employment. *See* Wis. Stat. §§ 103.24 and 103.65. Beard points to two possible violations: (1) Wis. Admin. Code § IND 71.04(3) (now § DWD 271.04(3)) which prohibits minors 16 or 17 years of age to be employed before 5:00 a.m. if delivering newspapers, nor after 9:00 p.m. on days preceding school days and not later than 11:00 p.m. on days not preceding school days; and (2) Wis. Admin. Code § IND 70.06(13)(now § DWD 270.06(13)) which prohibits

accident. Courts have approved of broad definitions of scope of employment. *Huebner,* 110 Wis. 2d at 636; *see also Leora v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.,* 156 Wis. 386, 393, 146 N.W.2d 520 (1914) (minor who was injured while on the way to repair railroad track need not actually be engaged in conduct, rather when he left for the scene of repair he was then engaged in track repair which is a violation of the statute). However, this is a factual question to be decided by a jury. *Huebner,* 110 Wis. 2d at 636. Accordingly, we conclude that whether there was a child labor law violation and whether that violation occurred while Anthony was acting within the scope of his employment are factual questions which should also be determined by a jury and not decided on summary judgment.

## B.

¶ 31. This brings us to the last issue which must be decided: whether Charles, a third party, is within the protected class of people under the child labor laws. *McGarrity,* 104 Wis. 2d at 427. If he is not, then whether The Tribune knowingly employed Anthony in violation of the child labor laws and whether Anthony was within his scope of employment at the time of the injury would not be pertinent.

¶ 32. As this court explained in *McGarrity,* the child labor laws were enacted to prevent minors from being employed or permitted to work in hazardous occupations in order to protect minors, and to protect fellow workers and frequenters who may be injured as a result of a minor's employment in hazardous occupa-

---

minors employed as motor vehicle drivers unless the driving is, inter alia, occasional and incidental to the minor's employment.

tions. *McGarrity*, 104 Wis. 2d at 427. The legislature has specifically empowered the Department of Industry, Labor and Human Relations (DILHR)[9] to promulgate rules regulating the employment of minors to protect the minor, other employees and frequenters. *Id.*

¶ 33. Beard argues that Charles was a frequenter of the highway—Anthony's argued place of employment. Because the child labor laws were intended to protect the public as a whole, Beard insists upon a broad interpretation of the term frequenter in the context of driving because driving is not limited to one place like other hazardous activities. In contrast, The Tribune maintains that Charles was a member of the general public who would not fall within the protected class of persons sought to be protected by the child labor laws.

¶ 34. A frequenter is defined as "every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render such person other than a trespasser." Wis. Stat. § 101.01(2)(d).[10] Charles, a person who was not a Tribune employe, was driving on a public highway when he was struck by Anthony's vehicle. Clearly, he was neither in a public building, nor was he a trespasser.

¶ 35. At issue then is what constitutes Anthony's place of employment and was Charles a frequenter

---

[9] As of May 13, 1997, the Department of Industry, Labor and Human Relations (DILHR) was changed to the Department of Workforce Development (DWD). 1997 Wis. Act 3, §§ 151, 230.

[10] In 1995, these definitions were recreated in Wis. Stat. § 103.001 (1995–96) and made applicable to chs. 103 to 106 (1995–96). *See* 1995 Wis. Act 27, § 3746.

within that place of employment at the time that he was struck by the vehicle. A place of employment is "every place, whether indoors or out. . .where either temporarily or permanently any industry trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly employed by another for direct or indirect gain or profit. . . ." Wis. Stat. § 101.01(2)(f).

¶ 36. Courts have approved of "a broad view of the definition of places of employment" in the case of minors. *Huebner,* 110 Wis. 2d at 636. In *Huebner,* the court affirmed the jury's verdict that a minor's employment, to assist in threshing oats—a legal activity—included assisting with the forage wagon—which was designated as dangerous for minors. *Id.* at 635–36. Similarly, in *Leora,* 156 Wis. at 393, a minor, who was legally employed as a section hand on the railroad, also helped to maintain and repair an assigned section of the railroad track—a prohibited activity. Although the minor was injured as the crew traveled by handcar to the point where the repairs were necessary, the court found that the crew entered upon its work when it embarked on the handcar for the scene of repair and was then engaged in track repairing. *Id.*

¶ 37. While these cases are not directly on point, they are instructive. In both cases, the court refused to construe the child labor provision narrowly to limit the employer's liability to only injuries directly related to the prohibited task because to do so would defeat the statute's purpose—to protect children from the dangers attendant upon certain extremely hazardous occupations, dangers which children do not usually

appreciate. *Huebner*, 110 Wis. 2d at 636; *Leora*, 156 Wis. at 393.

¶ 38. In this case, Anthony was employed in a street trade—he delivered bundles of newspaper supplements to carriers, merchants and vending machines and he delivered the newspaper to homes on his brother's carrier route. When the employment at issue is a street trade (which may or may not involve significant driving), by its very definition,[11] it follows that the place of employment is the public place in which the deliveries occur. In this case, the public street is where the operations related to street trades were carried on, and where Anthony was employed by The Tribune for profit. *See* Wis. Stat. § 101.01(2)(f).

¶ 39. A place of employment is to be safe and must protect the life, health, safety and welfare of every frequenter of such place of employment. *McGarrity*, 104 Wis. 2d at 426. Frequenters are protected because they may be injured as a result of a minor's employment. *See id.* at 426–27. Other drivers might be harmed by a minor engaged in a street trade which involves driving. It is reasonable, therefore, to classify such other drivers as frequenters, to the extent the minor is present and is engaged in a street trade in violation of the child labor laws.

¶ 40. In this case, if it is determined that: (1) The Tribune had actual or constructive knowledge of Anthony's employment; (2) The Tribune violated a child labor law; (3) such violation occurred at or about

---

[11] A street trade is defined in Wis. Stat. § 103.21(6) as:

[T]he selling, offering for sale, soliciting for, collecting for, displaying or distributing any articles, goods, merchandise, commercial service, posters, circulars, newspapers or magazines, or the blacking of boots, *on any street* or *other public place* or *from house to house*. [Emphasis added.]

21

the time of the injury; then we conclude that the public highway could be Anthony's place of employment and Charles, who was driving on the public highway, could be a frequenter intended to be protected by the child labor laws to the extent that Anthony was present and may have been engaged in the distribution of newspapers—a street trade. If there was a violation of the child labor laws when the accident occurred and Charles was within the protected class of people, The Tribune would be liable for any injuries stemming from that violation.[12] *Huebner*, 110 Wis. 2d at 637.

¶ 41. We recognize that there are cases stating that a highway is not a "place of employment"; however, these cases were decided within the context of alleged safe place statute violations. *See e.g., Padley v. Village of Lodi*, 233 Wis. 661, 662–63, 290 N.W. 136 (1940); *Herrick v. Luberts*, 230 Wis. 387, 389, 284 N.W. 27 (1939). If we were to interpret place of employment in the context of street trades in a similar manner, we would effectively eviscerate street trades law, Wis. Stat. § 103.21–103.31, and its purpose of protecting minors and others. When construing statutes, courts must presume that the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute, not defeats those purposes. *Verdolijak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 635, 547 N.W.2d 602 (1996). Therefore we must presume that the legislature enacted the child labor laws—including street trades—to prevent minors from

---

[12] If a minor is working in violation of the child labor laws, any contributory negligence of the minor is not a factor. *See D.L. v. Huebner*, 110 Wis. 2d 581, 642–44, 329 N.W.2d 890 (1983). Rather, contributory negligence has no application in an absolute liability case against the employer. *Id.* at 644.

being employed in hazardous occupations in order to protect minors, fellow workers, and frequenters at the minor's place of employment which in the context of a street trade includes a street or other public place. *McGarrity*, 104 Wis. 2d at 427.

¶ 42. A street trade is defined in Wis. Stat. § 103.21 as the selling or distributing of articles on any street, other public place or house to house. Section 103.21(6). Where a word or phrase is specifically defined in a statute, its meaning is as defined in the statute, and no other rule of statutory construction need be applied. *Fredricks v. Industrial Comm'n*, 4 Wis. 2d 519, 522, 91 N.W.2d 93 (1958). It is only when a word or phrase is used and is not specifically defined therein that common and approved usage of such word or phrase and other accepted rules of statutory construction apply. *Id.* Because § 103.21 defines a "street trade" as occurring in a public place, we are limited to this definition. For these reasons, we conclude that when determining the "place of employment" for a minor engaged in a street trade, the public places limitation under the safe place statutes does not and cannot apply.

## V.

¶ 43. The concurrence agrees with all but one of the conclusions reached by the majority, that is the question of the employer's liability. *See* concurrence at 29–32. We would hold an employer absolutely liable whether an illegally employed minor injures him/herself, another employe or a frequenter; the concurrence would not. Instead the concurrence would only hold an employer absolutely liable where the ille-

23

gally-employed minor injured him/herself. *See* concurrence at 27–28.

¶ 44. The concurrence's position appears to be inconsistent regarding the employer's liability based on the sheer luck of who is injured. Such a premise would undermine the legislative purpose for enacting the child labor laws—to protect the minor, other employees and frequenters from bodily injury caused by minors engaged in hazardous employment, Wis. Stat. § 103.65(1), *McGarrity*, 104 Wis. 2d at 427, and to subject the violator to criminal penalties, *Huebner*, 110 Wis. 2d at 645.

### VI.

¶ 45. In sum, we conclude that knowledge, actual or constructive, is implicit in an employer/employee relationship involving a publisher, or an intervening agency, and a minor involved in a street trade under Wis. Stat. § 103.21(1), on the part of the employer as to whom it is employing. In this case, there is a factual question whether The Tribune had knowledge, actual or constructive, that Anthony was delivering its bundles and newspapers. If this question is answered in the affirmative, there are several other issues, as heretofore mentioned, which must be determined before The Tribune can be held absolutely liable. We therefore reverse the judgment, and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

¶ 46. ANN WALSH BRADLEY, J. (*concurring*). While I agree with the majority that a genuine issue of material fact exists concerning Anthony Kropelin's employment status, I do not agree with the majority that an affirmative answer to that question results in absolute liability for Lee Enterprises. The majority opinion is correct that this court has in the past determined that a violation of the child labor laws can impose absolute liability on the employer. Majority op. at 9; *D.L. v. Huebner*, 110 Wis. 2d 581, 640–41, 329 N.W.2d 890 (1983). However, the majority opinion incorrectly concludes that absolute liability automatically results from a violation of the child labor laws regardless of who is injured. That is not, until today, the law of this state.

¶ 47. The majority opinion confuses negligence per se with absolute liability. Based on our prior cases, negligence per se rather than absolute liability is the proper analytical framework in this case. This seemingly minor detail carries with it significant practical consequences.

¶ 48. Negligence per se and absolute liability are related legal concepts in that they both generally stem from violations of statutorily imposed standards of care and they both reduce the elements that a plaintiff must prove to successfully assert a negligence claim. In a typical negligence action, the plaintiff must prove four elements prior to recovery: (1) the defendant had a duty to the plaintiff (2) that it breached (3) causing (4) the plaintiff's injury. *Nelson v. Davidson*, 155 Wis. 2d 674, 679, 456 N.W.2d 343 (1990). Any liability a defendant faces after a plaintiff proves these four elements is then reduced by the comparative negligence attributed to the plaintiff. Wis. Stat. § 895.045.

25

¶ 49. Negligence per se results from the violation of a statute in which the legislature has decreed the appropriate standard of care. *Huebner*, 110 Wis. 2d at 640; W. Page Keeton, *Prosser and Keeton on the Law of Torts* 229–30 (5th ed. 1984) (hereinafter "Keeton, *Law of Torts*"). In such cases, when a fact finder concludes that a party has violated the statute, duty and breach are "conclusively determined." Keeton, *Law of Torts* at 230; *see also Huebner*, 110 Wis. 2d at 640. However, "[n]egligence per se is not liability per se" and the plaintiff must still prove that the defendant's breach of its duty was a substantial cause of the plaintiff's injury. William L. Prosser, *Contributory Negligence as Defense to Violation of Statute*, 32 Minn. L. Rev. 105, 111 (1948); *Huebner*, 110 Wis. 2d at 640. Similarly, the defendant retains the ability to minimize or neutralize the finding of negligence with a showing that the plaintiff's negligence was equal to or greater than that perpetrated by the defendant. Keeton, *Law of Torts* at 230.

¶ 50. While absolute liability is also the result of a statutory violation, its consequences are significantly more severe than negligence per se. In these instances, a statutory violation results not only in a legal conclusion that the defendant breached a duty, but also in a similar conclusion that the breach was the cause of the plaintiff's injury. *Huebner*, 110 Wis. 2d at 640. Where absolute liability is the standard, a defendant cannot minimize its liability as the plaintiff's own contribution to his or her injury is not considered. *Id.* The relevant inquiry is thus reduced to (1) Did the defendant violate the statute, and (2) Was the plaintiff injured? *Id.*

¶ 51. Because of its potency, absolute liability is a rarity in the law. It will exist only in those limited circumstances where the legislature has "so clearly

intended to protect a particular class of persons against their own inability to protect themselves." Keeton, *Law of Torts* at 230; *Restatement (Second) of Torts*, § 483, cmt. e, f.

¶ 52. The cases in which we have held an employer absolutely liable for a violation of the child labor laws occurred where the *child* was the person injured. *Huebner*, 110 Wis. 2d at 588–91 (child injured in farm accident); *Reiten v. J. S. Stearns Lumber Co.*, 166 Wis. 605, 606, 165 N.W. 337 (1918) (child injured in lumber company accident); *Green v. Appleton Woolen Mills*, 162 Wis. 145, 155 N.W. 958 (1916) (child injured in factory accident); *Pinoza v. Northern Chair Co.*, 152 Wis. 473, 479–81, 140 N.W. 84 (1913) (child injured in factory accident); *Sharon v. Winnebago Furniture Mfg. Co.*, 141 Wis. 185, 124 N.W. 299 (1910) (child injured in ripsaw accident); *see also Tisdale v. Hasslinger*, 79 Wis. 2d 194, 197–98, 255 N.W.2d 314 (1977); *Hertz Drivurself Stations v. Industrial Commission*, 254 Wis. 308, 309, 35 N.W.2d 910 (1949).

¶ 53. Conversely, this court has employed the negligence per se standard in those cases where the illegally-employed child injured another. *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 422–23, 312 N.W.2d 37 (1981) (non-employee injured by child employed in violation of the child labor laws); *see also Huebner*, 110 Wis. 2d at 641 n.11. Contrary to the majority opinion, our precedent compels us to apply the negligence per se standard because the injured party here is not the allegedly employed minor.

¶ 54. Aside from it being our law for nearly ninety years, applying absolute liability when the child is injured and negligence per se when the child injures another furthers laudable public policy. In the exceptional cases where absolute liability is imposed, it is

27

only so because that class of persons is deemed unable either to provide for its own safety or appreciate the danger of its actions. Prosser, 32 Minn. L. Rev. at 118–20; Keeton, *The Law of Torts* at 230.

¶ 55. Much like a child is deemed legally incapable of consenting to sexual contact, Wis. Stat. § 948.02, a child is also legally incapable of contributing to his or her injury when employed in violation of the child labor laws. As a result, this state has determined that the employer who illegally employs a child cannot benefit from that child's ignorance or inexperience contributing to his or her own injury. *Huebner*, 110 Wis. 2d at 640–42; *Sharon*, 141 Wis. at 190. The child labor laws exist because the legislature considers certain activities too dangerous for children. *See* Wis. Admin. Code § DWD 270.06 (May 1997). An illegally employed child who is then injured in the course of that employment only proves the legislature's point. To allow the employer to mitigate its liability by arguing that the child's actions are responsible for his or her own injury—contending in essence that the statute was all too correct—perversely turns the child labor law on its head. *See Restatement (Second) of Torts*, § 483, cmts. c, e, f (1964).

¶ 56. Those same considerations are not present when, as in this case, someone other than the illegally employed child suffers the injury. An adult such as Beard certainly was not within a class of persons legally incapable of contributing to his injury. But for the fact that Beard was killed by a child, the majority would hardly suggest that any negligence on his behalf should not factor into the liability calculation.[1] I see no

---

[1] The majority contends that this negligence per se/absolute liability dichotomy "appears to be inconsistent regarding the employer's liability based on the sheer luck of who is injured."

reason in either law or policy to relieve him of that burden in this case.

¶ 57. The above analysis compels me to conclude that under these facts Lee Enterprises could not be held absolutely liable. At best, it could be held negligent per se. Before such a holding however, a court must conclude that the violations of these particular statutes impose civil consequences and a fact-finder must conclude that an employment relationship existed.

¶ 58. The violation of a statute does not automatically impose civil liability. This court has said that three questions must be answered in the affirmative before the violation of a statute will constitute negligence per se.

> (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

Majority op. at 24. The majority seems to forget, or at least overlook, the fact that under the appropriate negligence per se test Lee Enterprises is hardly home free. It has breached a duty and can do nothing to escape that fact.

Moreover, "sheer luck" cuts both ways. The majority has nothing to say about the fact that under its test persons who are injured by an illegally-employed minor do not need to prove causation and are absolved from any of their own actions that contribute to their injury. These advantages result only from the "sheer luck" of having been injured by an illegally-employed minor.

*Tatur v. Solsrud*, 174 Wis. 2d 735, 743, 498 N.W.2d 232 (1993). Beard argues that a violation of Wis. Stat. §§ 103.24 and 103.65 creates negligence per se. I agree.

¶ 59. First, these particular statutes and the administrative rules promulgated pursuant to them regulate the type of employment a minor may engage in as well as the hours and conditions of that employment. *See, e.g.*, Wis. Admin. Code § DWD chs. 270 & 271 (May 1997). Rule DWD § 270.06(13) declares that driving a motor vehicle on a public highway, except where such driving is incidental and done during daylight hours, is a dangerous activity for the minor. Considering that Charles Beard was killed in the middle of the night, that injury was of the type that the statute was designed to prevent. *See also* DWD § 270.05(2) (regulating hours that a minor can work); DWD § 271.04 (same).

¶ 60. Second, under the administrative code, Beard must either be a fellow employee or a frequenter in order to fall within the class of persons protected by the statute. DWD § 270.06. Like the majority I conclude that because Kropelin was engaged in a street trade, the public highway on which he was traveling became his place of employment. Majority op. at 20–21. Therefore, at the time of the accident, by driving on the public highway Beard was a frequenter and within the class of persons protected by the statutes. *Id.* at 21–22.

¶ 61. Third, I conclude that the legislature has intended that a violation of either Wis. Stat. §§ 103.24 or 103.65 gives rise to civil liability. In short, the statutes at issue here indicate "such a clear expression of concern for the safety of [minor employees, other employees, or frequenters], committed so plainly to the responsibility of [employers], that [I] conclude that the [employers] so charged are exposed to civil liability for

their failure to do that with which they are charged." *Walker v. Bignell*, 100 Wis. 2d 256, 271, 301 N.W.2d 447 (1981). *See also McGarrity*, 104 Wis. 2d at 418–19; *Wells v. Chicago & North Western Transp. Co.*, 98 Wis. 2d 328, 332–34, 296 N.W.2d 559 (1980).

¶ 62. In sum, I agree with the majority that a genuine issue of material fact exists as to whether Anthony Kropelin was an employee of Lee Enterprises for purposes of Wis. Stat. § 103.21.[2] Summary judgment was therefore erroneously granted. However, I cannot agree with the majority that a jury's affirmative answer to that question results in Lee Enterprises being absolutely liable to Beard. Rather, under our long-standing precedent, a jury's affirmative answer would result in Lee Enterprises being negligent—but not necessarily in it being liable. Liability would result

---

[2] I also agree with the majority that the interplay between Wis. Stat. § 103.21 and §§ 103.25–103.275 suggests that an employer must have either actual or constructive knowledge that a minor is in its employ. Majority op. at 11–13. However, I cannot agree with the majority's justifying that conclusion in part on the legislature's modification of chapter 102 of the statutes. *Id.* at 13–15.

Chapter 102 regulates worker's compensation while chapter 103 regulates employment. These are separate concepts in the law whose definitions of terms and ultimate purposes need not be in harmony. Statutes should be read *in pari materia* when they are found within the same chapter and concern the same subject matter. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 165–66 n.11, 558 N.W.2d 100 (1997) (Wis. Stat. § 236.13(1)(c) and § 236.11); *State v. Sweat*, 208 Wis. 2d 409, 417, 561 N.W.2d 695 (1997) (different subsections in Wis. Stat. § 973.20); *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982) (different subsections of Wis. Adm. Code, § AG 110.02). No similar maxim applies to statutes outside of the same chapter or subject matter.

only if Beard additionally convinced a jury that Lee Enterprises' negligent actions caused his injury in greater proportion than any negligent actions of his own. Accordingly, I concur.

¶ 63. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this opinion.